(No. 44953.—

THE PEOPLE *ex rel.* EDWARD V. HANRAHAN, State's Attorney, Petitioner, v. WILLIAM S. WHITE, Circuit Judge, *et al.,* Respondents.

*Announced Jan. 26, 1972—Opinion filed March 30, 1972.*

SCHAEFER, GOLDENHERSH and RYAN, JJ., dissenting.

EDWARD V. HANRAHAN, State's Attorney, of Chicago, for petitioner.

WILLIAM J. SCOTT, Attorney General, of Springfield (JAMES B. ZAGEL, Assistant Attorney General, of counsel), for respondent circuit judge.

PATRICK T. MURPHY, JOHN B. SHULLEN-BERGER and JAMES M. DeZELAR of THE LEGAL AID BUREAU, of Chicago, for respondent minor.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Pursuant to supervision and neglect petitions, a female minor was declared a ward of the circuit court of Cook County, juvenile division. Richard S. Laymon of the Department of Children and Family Services of the State of Illinois was appointed her guardian-administrator.

The female was found to be pregnant, and during the course of medical and psychiatric examinations, the Medical Certification Board of a Chicago hospital determined that she was "suicidal" and in its medical judgment believed it necessary to perform a therapeutic abortion in order to prevent the female from taking her own life. The guardian-administrator refused to permit such abortion.

Attorneys for the female minor petitioned the court for an "Order on the Guardian *** to Permit an Abortion." After a lengthy evidentiary hearing which included testimony of reputed experts, stipulations and documentary evidence, the court ordered that the guardian "shall immediately and without delay, consent and arrange for a therapeutic abortion to be performed upon the person *** by a physician licensed to practice medicine in the State of Illinois in a licensed medical facility."

This order was predicated upon two findings, namely: (1) that section 23—1(b) of the Criminal Code of 1961 (Ill.Rev.Stat. 1971, ch. 38, par. 23—1(b)), which provides, "It shall be an affirmative defense to abortion that the abortion was performed by a physician licensed to practice medicine and surgery in all its branches and in a licensed hospital or other licensed medical facility because necessary for the preservation of the woman's life," included not only physical but psychiatric grounds as an affirmative defense; and (2) that the evidence presented was sufficient to establish that said female minor was in danger of death by reason of suicidal tendencies.

We granted leave to the State's Attorney of Cook County, who was not made a party to the aforementioned proceedings, to file this original action for writs of *mandamus* and prohibition directed to and requiring the circuit court judge to expunge the order for a therapeutic abortion and prohibiting the Department of Children and Family Services from acting pursuant thereto. While all of the normal criteria are not present, this court will entertain petitions, where necessary, for such extraordinary writs under its administrative powers and duties provided in the constitution. *(People ex rel. Sears v. Romiti (1971), 50 Ill.2d 51, 54-55; People v. Sears (1971), 49 Ill.2d 14, 32-33; People ex rel. Continental Air Transport Co. v. Strouse (1969), 41 Ill.2d 567, 570.)* After submission of this cause on January 26, 1972, we directed that the writs issue in accordance with the prayer and now express our reasons for such action.

The parties to this proceeding have not contested the constitutionality of section 23—1 of the Criminal Code. The issues, therefore, in this cause are: (1) whether, in construing section 23—1(b), psychiatric or mental grounds may be considered for a legal therapeutic abortion, and (2) if so construed, has the evidence established that an abortion was "necessary for the preservation of the woman's life.

The cardinal rule of statutory construction, to which all other canons and rules are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature. *(People v. Hudson (1970), 46 Ill.2d 177; People ex rel. Cason v. Ring (1968), 41 Ill.2d 305; Electrical Contractors Ass'n of Chicago v. Illinois Building Authority (1966), 33 Ill.2d 587);* and where, as in this case, there is no controlling precedent, the history, existing circumstances and contemporaneous conditions of the legislation are invaluable in ascertaining that intent. *People ex rel. Moss v. Pate (1964), 30 Ill.2d 271; People ex rel. Joseph v. Pennsylvania R.R. Co. (1959), 18 Ill.2d 61; Scofield v. Board of Education (1952), 411 Ill. 11.*

The legislative history of our abortion statutes ante-dating section 23—1 of the Criminal Code (Ill.Rev.Stat. 1961, ch. 38, par. 3; Rev.Stat. 1874, p. 348, div. I, par. 3; Laws.of 1867, p. 89, secs. 1, 2, 3; Rev.Stat. 1845, p. 158, sec. 46) did not prohibit the performance of a therapeutic abortion for the preservation of a woman's life due to physical dangers. *(Hatchard v. State (1891), 79 Wis. 357, 48 N.W. 380;* see generally Perkins, Criminal Law (1969), pp. 145—49.) Section 23—1 is merely a recodification of the prior law with the additional requirement that it be performed by a licensed physician in a licensed hospital.

Respondents urge that in the light of advanced medical and psychiatric technology, grounds for a thera-peutic abortion are, by implication and intendment, encompassed within section 23—1. Legislative history does not support this reasoning. Subsequent to the enactment of section 23—1, which became effective on January 1, 1962, there were introduced in the 76th General Assembly (1969) the following proposed revisions and amendments thereto: Senate Bill 603—"*** is likely to result in the serious permanent impairment of the physical health of the woman; or the serious permanent impairment of the mental health of the woman ***" (tabled on third reading); House Bill 663—"*** is likely to result in the

death of the woman, or the serious permanent impairment of the physical health of the woman, or the serious permanent impairment of the mental health of the woman ***" (failed to pass); House Bill 1407—"The continuance of the pregnancy would gravely endanger and impair the physical or mental health of the female ***" (failed to pass: 91 to 38).

Additionally, similar legislation was introduced in the 77th General Assembly (1971) as follows: House Bill 043—"The continuance of the pregnancy would gravely endanger and impair the physical or mental health of the female ***" (tabled in Judiciary Committee); House Bill 3076—"*** if the abortion is necessary for the mental or physical well being of the woman ***" (in Judiciary Committee).

As we see, there have been repeated attempts to have the legislature engraft the concept of mental or psychiatric grounds for a legal therapeutic abortion. These attempts indicate that section 23—1(b), as originally passed and now in force, was not intended to and does not encompass mental or psychiatric grounds. Otherwise, such revisions or amendments would have been unnecessary.

States which have chosen to permit mental and physical grounds as "necessary for the preservation of a woman's life" have done so by specifically incorporating "mental health" into their statutes. California—Cal. Penal Code Ann., sec. 274; Colorado—Colo. Rev. Stat. Ann., sec. 40—2—50, 53; Delaware—Del. Code Ann., tit. 24, secs. 1790—93; Kansas—Kan. Stat. Ann., sec. 21—3407; Maryland—Md. Ann. Code, art. 43, sec. 137; New Mexico—N.M. Stat. Ann., sec. 40A—5—1 to 5—3; Oregon—Ore. Rev. Stat., sec. 435.405—.495; South Carolina—S.C. Code Ann., sec. 16—87 to 89; Virginia—Va. Code Ann., sec. 18.1—62 to 62.3.

Likewise, considering the fact that there were attempts to incorporate "mental impairments" into section 23—1(b), we find that the intent of the legislature was

to prohibit such grounds as an affirmative defense to an abortion. We, therefore, cannot read into that statute by implication or intendment respondents' suggested construction which is in direct conflict with the legislative intent. Without any doubt we find that there is definitive legislative history and rational basis for excluding the action ordered in this case, based upon psychiatric grounds, from consideration as "necessary for the preservation" of the female's life.

Having so concluded, we need not consider the other issue presented.

*Writs awarded.*

MR. JUSTICE SCHAEFER, dissenting:

The 15-year-old girl involved in this case is a ward of the juvenile court of Chicago who had unsuccessfully attempted to commit suicide on two occasions. She was examined by psychiatrists. One, a resident at Michael Reese Hospital in Chicago, had made the initial examination; another, who had served as Chief of the Psychiatry Department at Cook County Hospital and is serving presently on the staff of the Psychiatry Department of Presbyterian-St. Lukes's Hospital, examined the girl on two separate occasions. Each of these doctors testified that it was critical that the girl receive an abortion in order to preserve her life, because otherwise it was highly probable that she would commit suicide. The State's Attorney of Cook County requested two additional psychiatrists to examine the girl. They did so and reported that she was suicidal and that if an abortion was not performed it was significantly probable that she would commit suicide. The State's Attorney did not call either of these two doctors as witnesses, but stipulated as to what their testimony would be.

The State's Attorney did call two other witnesses. One, a psychiatrist on the faculty of the University of Minnesota Medical School, who also specializes in obstetrics and gynecology, testified that psychiatrists cannot

predict when it is necessary to perform an abortion in order to preserve the life of the mother. The other, a resident at the Mayo Clinic, also testified that in his opinion psychiatrists can never determine when it is necessary to preserve the life of the mother. He also testified that he would himself perform a therapeutic abortion only in cases of "ectopic" pregnancy, meaning a pregnancy which does not occur in the womb, is "self-destroying to the unborn child and can be devastating to the mother as well."

Based upon the testimony and upon numerous articles which were received in evidence, the trial judge found "on the basis of the facts presented and evidence available in this cause that an abortion is necessary to the preservation of the life of" the ward. He therefore directed the guardian to consent to the abortion.

The case comes to this court in a curiously inverted fashion. There is no statute which specifically authorizes the performance of an abortion under any circumstances. But section 23—1 of the Criminal Code, which defines the crime of abortion, provides in paragraph (b): "It shall be an affirmative defense to abortion that the abortion was performed by a physician licensed to practice medicine and surgery in all its branches and in a licensed hospital or other licensed medical facility because necessary for the preservation of the woman's life." The initial proceeding in this case sought a declaration of the rights of the parties. After hearing the evidence the trial judge denied declaratory relief and, as stated, directed the guardian to consent to the abortion. There is no doubt but that the trial court had jurisdiction to direct the guardian to consent to and arrange for the abortion.

An original action was then filed in this court by the State's Attorney upon the ground that it was not his "desire nor would it be in the interest of justice to needlessly subject a party or state agency to criminal prosecution when they are purportedly acting pursuant to

color of law under an erroneous order of a Circuit Court Judge." The court concurred in this view, and in this extraordinary situation decided to take jurisdiction of this original action for *mandamus* and prohibition.

The controlling portion of the statute establishes an affirmative defense when an abortion is performed "because necessary for the preservation of the woman's life." The majority opinion narrows the defense established by the General Assembly by adding an additional restrictive clause. It construes the statute as though it read "because necessary for the preservation of the woman's life—unless her life is endangered by reason of her mental condition." For this narrow reading the majority relies upon a dictum of the Supreme Court of Wisconsin in *Hatchard v. State (1891), 79 Wis. 357, 48 N.W. 380.*

In my opinion this reading of the statute is unwarranted. Whether an abortion is necessary for the preservation of a woman's life is not to be determined by the state of medical knowledge more than 75 years ago. I suppose that no rational interpretation of this criminal statute, which is concerned with danger to a woman's life, would exclude a physical danger to a woman's life just because it was not known to medical science a hundred years ago. So it should be with dangers to life that are due to mental causes. The science of psychiatry has been recognized by the legislature in many statutes. Perhaps most closely analogous is the Sexually Dangerous Persons Act (Ill.Rev. Stat. 1971, ch. 38, art. 105) which authorizes continued imprisonment depending upon an individual's mental condition, or, as the statute puts it, his "propensities," and the likelihood of specific future conduct attributable to those propensities. I know of no reason why a psychiatrist's judgment as to the likelihood of suicide should be ignored.

The majority seeks support for its construction of the statute in the fact that the General Assembly rejected several proposed amendments which would have shifted

the statutory criterion from danger to the life of the woman to impairment of her physical or mental health. But the fact that the legislature refused to change the ground of affirmative defense from *danger to life* to *impairment of health* does not, in my opinion, indicate or even suggest an intention to exclude from the existing statute the possibility of danger to life from mental causes.

GOLDENHERSH and RYAN, JJ., join in this dissent.