THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* CHARLES PORCELLI, Defendant-Appellee.

(No. 58730; )

First District (3rd Division)—November 21, 1974.

*Rehearing denied January 23, 1975.*

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis, William K. Hedrick, and John M. Cutrone, Assistant State's Attorneys, of counsel), for the People.

George J. Cotsirilos and William J. Martin, both of Chicago, for appellee.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

An assistant State's Attorney tape-recorded a telephone conversation between a Glencoe policeman and a Chicago lawyer. In the conversation the lawyer renewed a prior $300 offer he had made to the officer if the officer would change his report in reference to a client of the lawyer whom he had arrested. The electronic eavesdropping was purportedly done under the authority of section 14—2 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 14—2). The lawyer was indicted for bribery (Ill. Rev. Stat. 1971, ch. 38, par. 33—1). At his trial, the court suppressed the recorded conversation and the evidence of the events that followed it. The State thereupon struck the case with leave to reinstate and appealed.

The issues presented are these: whether the State complied with the requirements of the statute; whether the statute is constitutional; whether the eavesdropping violated the Fourth Amendment to the Constitution

of the United States or article I, section 6, of the Illinois Constitution of 1970, and whether the evidence obtained subsequent to the recording should have been suppressed.

Anthony Ormiston was arrested for driving a vehicle while under the influence of intoxicating liquor. The arresting officer, Russell Strutz of the Glencoe, Illinois, police force, tested Ormiston to determine the degree of his insobriety and his ability to drive an automobile. In reporting the results of his visual examination Strutz stated that Ormiston was unsure in turning and completely missed his nose when he tried to touch it with his finger.

At the hearing on the motion to suppress, an offer of proof was made that if permitted to do so, Strutz would testify that the defendant, Charles Porcelli, who represented himself to be Ormiston's lawyer, called upon him at the Glencoe police station. Porcelli placed an envelope which he said contained $300 on a desk and said it would be the officer's if he would alter his report in two respects: change "unsure in turning" to "sure," and "completely missed" the finger-to-nose test to "hesitant." Strutz said he would have to talk it over with his chief of police and would telephone Porcelli.

Strutz telephoned Porcelli the next afternoon but he did so from the State's Attorney's office. He consented to having the conversation recorded and the State's Attorney approved its transcription. Strutz testified that he told Porcelli he had talked to the chief and asked "what is there for us?" Porcelli replied, "Three, like I told you last night." The officer said he had the alcohol influence report in front of him and asked "what is it you wanted?" Porcelli answered, "A sure on turning and a hesitant on finger to nose." He inquired whether Strutz was working from 3 to 11 P.M. and said, "Well, I will be out there tonight."

Porcelli came to the station about 10:30 P.M. Strutz gave him copies of the original and amended report which he placed in his briefcase and received in return an envelope filled with bills. The exchange took place in a room that was used for the identification of suspects and it was equipped with a mirror. Porcelli asked if it was a one-way mirror. Strutz said it was and Porcelli walked out of the room.

A Glencoe police lieutenant and the assistant State's Attorney who had been present at the afternoon's telephone talk were standing in back of the mirror. They observed the transaction and overheard the conversation. The lieutenant arrested Porcelli as he entered his automobile and brought him back to the station. The lieutenant then returned to the auto and retrieved the briefcase containing the reports.

The trial court sustained the motion to suppress for these reasons: the electronic surveillance was done without a warrant; it violated the

Fourth Amendment to the Federal Constitution and section 6, article I, of the State Constitution; the statute under which it was done was invalid and the authorization sanctioning it was over-broad. Because we fully concur with the last reason, we find it unnecessary to discuss the others. Constitutional issues should not be considered if a case can be decided on other grounds. *Alexander v. Louisiana* (1972), 405 U.S. 625; *People v. Fleming* (1971), 50 Ill.2d 141, 277 N.E.2d 872.

The statute provides:

"A person commits eavesdropping when he:

(a) Uses an eavesdropping device to hear or record all or any part of any conversation unless he does so with the consent of any one party to such conversation and at the request of a State's Attorney; * * *" Ill. Rev. Stat. 1971, ch. 38, par. 14—2.

To establish its compliance with the statute, the following document, which was characterized as a "memorial," was introduced into evidence by the State:

"Office of the State's Attorney
September 28, 1972

Lieutenant Louis Cantone
Chief Investigator
State's Attorney's Office
2600 South California Avenue
Chicago, Illinois 60608

Dear Sir:

This is to request and authorize that investigators under your command designated by you or by supervisory personnel responsible to you, to use an eavesdropping device to hear or record all or any part of any conversation between one Russell Strutz and any other individual if such hearing or recording is done with the consent of Russell Strutz.

This request and authorization is made pursuant to Chapter 38, Section 14—2(a) of the Illinois Revised Statutes, 1971.

This request and authorization is in effect from 11:00 A.M., September 28, 1972 through and including October 5, 1972, 11:00 A.M.

Yours truly,

/s/ Edward V. Hanrahan

EVH:NJM:rmn State's Attorney of Cook County."

Certain things about the letter cast suspicion upon the time it was written and the authenticity of the signature. The State called the docu-

ment a memorialization of a bookkeeping entry, which suggests that it was issued after the recorded conversation and that its purpose was to formalize an earlier oral authorization; lending weight to this inference is the statement that it was to be effective from 11 A.M., September 28, 1972, which was 4 hours before the recording took place and 2 hours before Strutz requested it. The initials NJM appended to the letter were those of an assistant State's Attorney who was the head of the special prosecutions unit of the State's Attorney's office; their presence on the letter carries an implication that he was the actual writer.

■■ But apart from these possibly significant factors (see *United States v. Giordano* (1974), 416 U.S. 505; but *cf. People v. Nahas* (1973), 9 Ill.App.3d 570), the letter was too broad. It authorized any one of a large number of people to use an eavesdropping device to hear or record, not conversations between Strutz and Porcelli, but any conversation Strutz might have with anyone during a period of 1 full week.

The Illinois statute flatly declares that the use of an eavesdropping device is a criminal offense. In this respect the statute comports with the Constitution of 1970 which states: "The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means." (Ill. Const. (1970), art. I, § 6.) The consent by one participant in a conversation to its electronic interception by a third party may prevent the interception from coming within the purview of the Fourth Amendment to the Federal Constitution, but it is not enough to prevent it from being a violation of the statute. The staute not only requires the consent of one of the parties, but a request by the State's Attorney of the county in which the surreptitious surveillance is to take place. These restraints on electronic eavesdropping and the mandate of our State Constitution demand the strict construction of the statute and coordinately, the equally strict scrutiny of all purported consents and requests, so that in Illinois citizens may be safeguarded from promiscuous governmental surveillance, civilian snooping or other unreasonable intrusions into their privacy.

■■ Since the authorization by the State's Attorney's office did not meet the standards required by Illinois law, the recording of the Strutz-Porcelli conversation was properly suppressed. It did not follow, however, that Strutz could not testify to what was said. (*United States v. White.* (1971), 401 U.S. 745.) The unlawful transcribing tainted all evidence which was obtained as the result of the illegal act such as the transcription itself, the presence of the assistant State's Attorney at the Glencoe police station and his corroborating testimony as to what he

heard and witnessed. But the transcribing did not render inadmissible all testimony concerning the conversation or the evidence which was not directly derived from it.

In *Wong Sun v. United States* (1963), 371 U.S. 471, 487-88, the court said:

> "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'"

And in 29 Am. Jur. 2d *Evidence* § 415 (1967). it is stated:

> "This 'fruit of the poisonous tree' doctrine extends, however, only to facts which were actually discovered by a process initiated by the unlawful act; if information which could have emerged from an unlawful search in fact stems from an independent source, the evidence is admissible."

Strutz did not telephone Porcelli just so that a recording could be made. It is true that he telephoned him from the State's Attorney's office for this purpose, but he could have called him nevertheless. Porcelli had asked Strutz to let him know whether he would change his report; Strutz had agreed and was following through on his promise. Likewise, no knowledge gleaned by the State from the recording caused Porcelli to go to the Glencoe police station to make the payoff. He went there because Strutz told him the report had been altered in accordance with his request. He did not hand $300 to Strutz because of any information derived by the State from the recording. He made the payment in exchange for the revised report because this is what he had said he would do when he first visited Strutz. Also, the witnessing of the exchange by the Glencoe police lieutenant, his arrest of Porcelli and the seizure of his briefcase would have happened whether or not there had been a recording. Whether the seizure may have been illegal for other reasons need not be determined in this opinion.

The telephone conversation occurred as a logical progression of Strutz' handling of the case. The conversation was motivated independently of the eavesdropping. There was no essential connection between the conversation and the eavesdropping and Strutz' testimony provides an independent source of its content. He was a participant in the conversation and his knowledge of what was said was not gained from the illegal recording.

Strutz' testimony did not become inadmissible by reason of his having

deceived Porcelli about his intention to accept the bribe. This point was covered in *Lopez v. United States* (1963), 373 U.S. 427, 438, where the court said:

> "We need not be long detained by the belated claim that Davis should not have been permitted to testify about the conversation of October 24. Davis was not guilty of an unlawful invasion of petitioner's [Lopez'] office simply because his apparent willingness to accept a bribe was not real. [Citation.] He was in the office with petitioner's consent, and while there he did not violate the privacy of the office by seizing something surreptitiously without petitioner's knowledge. [Citation.] The only evidence obtained consisted of statements made by Lopez to Davis, statements which Lopez knew full well could be used against him by Davis if he wished. We decline to hold that whenever an offer of a bribe is made in private, and the offeree does not intend to accept, that offer is a constitutionally protected communication."

■■ The conversations betwen Strutz and Porcelli prior to September 28, their telephone conversation on that date, their meeting that night, the testimony of the lieutenant as to that meeting, the copies of the reports given to Porcelli and the money he gave to Strutz were evidentiary items not generated by the eavesdropping and were admissible in evidence.

■■ The trial court's suppression of the recording, the assistant State's Attorney's testimony regarding it and his participation in events subsequent to it, will be affirmed. The suppression of the evidentiary items enumerated in the preceding paragraph will be reversed. The cause will be remanded for further proceedings not inconsistent with this opinion.

Affirmed in part; reversed in part and remanded with directions.

McNAMARA, P. J., and MEJDA, J., concur.