THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* HRANT KEZERIAN, Defendant-Appellee.

Fifth District   No. 77-260

Opinion filed July 13, 1978.

JONES, J., dissenting.

Clyde L. Kuehn, State's Attorney, of Belleville (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Gomric & Strellis, of Belleville (James J. Gomric, of counsel), for appellee.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:
The State appeals from an order of the trial court suppressing various tape recordings and all evidence derived therefrom. The principal issue on appeal is whether the trial court erred in finding that the State had not complied with the relevant provisions of the eavesdropping act in

recording certain conversations of defendant Hrant Kezerian (Ill. Rev. Stat. 1975, ch. 38, par. 14—1 *et seq.*).

On October 21, 1975, special agent Robert Magnusen of the Illinois Bureau of Investigation informed Robert Rice, State's Attorney of St. Clair County, of a plan to burglarize the Cahokia Downs Race Track. Magnusen told Rice that he had learned of the plan from Ronald Fuentes, a security guard at the race track, and requested Rice's authorization to record a conversation concerning the plan between Fuentes and defendant Kezerian. Rice orally approved this request and the recording was made on October 22, by means of a concealed eavesdropping device carried by Ronald Fuentes. On October 23 Agent Magnusen requested Rice's authorization to monitor and record a phone conversation between Fuentes and defendant Kezerian. The State's Attorney again orally consented and on October 23 a telephone conversation between Fuentes and Kezerian was recorded. On October 24, Agent Magnusen presented the State's Attorney with three separate written authorizations prepared by the Illinois Bureau of Investigation, two of which confirmed oral authorizations of the surveillance conducted on October 22 and 23 and the third authorizing another surveillance of a conversation between Fuentes and Kezerian to take place on October 25. State's Attorney Rice signed these authorizations and a conversation between Fuentes and Kezerian on October 25 was recorded by means of a device carried by Fuentes. A final surveillance of a conversation between Fuentes and Kezerian took place on October 26, 1975. Agent Magnusen received oral authorization for this surveillance which was confirmed by a memorandum dated October 29 and signed by State's Attorney Rice.

At the hearing on defendant's motion to suppress these recordings, Agent Magnusen testified that he personally conducted each surveillance, although Fuentes actually used the recording device on two occasions. Magnusen also stated that he had told the State's Attorney that Ronald Fuentes had consented to each recording and had kept him informed of the parties involved in the conversations. Neither the oral authorization nor the confirming memoranda, however, contained any restrictions on who was to be put under surveillance or who was to monitor the conversations, and Magnusen testified that the October 22 conversation was in fact transmitted over the radio and was heard by several agents and police officers. On direct examination Magnusen testified that the written memoranda were the authorizations under which he acted. On cross-examination, however, he stated that he conducted surveillance pursuant to the oral authorizations of State's Attorney Rice. Nevertheless, Magnusen did state that he knew of no limitations on the State's Attorney's authorizations except those stated in the written confirmations.

Magnusen also testified that although Fuentes conducted the actual surveillance on October 22 and 25, Fuentes was not informed of any restrictions upon the individuals whose conversations were to be recorded.

Each of the written authorizations or confirmations was identical except for the date and time of surveillance. The following excerpts from the memoranda of October 24 confirming the State's Attorney's authorization of the October 22 surveillance represent the limitations imposed on each authorization:

"This letter is to confirm the oral request made by you to use electronic eavesdropping equipment in reference to the Cahokia Downs Race Track investigation. The request to use the eavesdropping equipment is granted with the following limitations:

That an agent or agents of the Illinois Bureau of Investigation use the electronic eavesdropping device to hear or record all or part of any conversation with the consent of any one party to the conversation.

That the said eavesdropping shall occur only between the hours of 12 noon and 1:30 p.m. on Wednesday, October 22, 1975, unless further notification is received from this office, and that the eavesdropping shall occur within the boundaries of St. Clair County in Illinois.

Any information or evidence obtained through the use of said eavesdropping device with the above limitations shall be used or divulged only in a criminal proceeding."

The trial court granted defendant's motion to suppress the tape recordings and any testimony which originated from the use of the eavesdropping equipment. The court determined that the requests for surveillance were made by agents of the Illinois Bureau of Investigation and not the State's Attorney as required by the eavesdropping act. The court's primary objection to the surveillance, however, was that the authorizations were too broad in that they failed to identify the persons who were to monitor and record the conversations or the persons who were to be placed under surveillance. At the time the surveillance in this case took place, section 14—2 of the eavesdropping act of 1968 was in effect and provided in pertinent part that

"A person commits eavesdropping when he:

(a) uses an eavesdropping device to hear or record all or any part of any conversation unless he does so with the consent of any one party to such conversation and at the request of a State's Attorney;
* * *." (Ill. Rev. Stat. 1975, ch. 38, par. 14—2(a).)

Section 14—5 of the act provided in pertinent part that

"Any evidence obtained in violation of this Article is not admissible in any civil or criminal trial * * *." Ill. Rev. Stat. 1975, ch. 38, par. 14—5.

The State contends on appeal that the statute does not require that a State's Attorney initiate a request for electronic surveillance but only that such requests be subject to the authorization of a State's Attorney. The State also contends that the nature of the authorization to be given lies within the sole discretion of the State's Attorney and therefore the authorizations granted by State's Attorney Rice in this case could not have been in violation of the statute. Finally, the State asserts that even if the tape recordings were properly suppressed, the trial court erred in suppressing any testimony which was the product of the surveillance. Although there is some merit to the argument that requests for electronic surveillance need not originate with the State's Attorney, we believe the statute does contain certain implicit limitations on the State's Attorney's discretion which were exceeded in this case.

■■ The eavesdropping act of 1968 required that a State's Attorney request the use of an eavesdropping device but it did not provide any specific standards governing requests for electronic surveillance. Thus, the question of what, if any, limitations existed on the authority of the State's Attorney to make such requests must be determined from a careful examination of the General Assembly's intent and purposes in enacting the statute. (*Inskip v. Board of Trustees*, 26 Ill. 2d 501, 510, 187 N.E.2d 187.) In construing an ambiguous statutory provision, courts are not controlled by the literal meaning of the relevant language, but must consider and give primary effect to the spirit, intent and purpose of the enactment. (*Brown v. Burdick*, 16 Ill. App. 3d 1071, 301 N.E.2d 409.) In order to determine legislative intent and purpose in the case of an ambiguous provision the court may rely on the history of the enactment as well as on contemporaneous and subsequent legislation on the same subject. (*People ex rel. Hanrahan v. White*, 52 Ill. 2d 70, 285 N.E.2d 129, *cert. denied*, 409 U.S. 1059, 34 L. Ed. 2d 511, 93 S. Ct. 562: *Creel v. Industrial Com.*, 54 Ill. 2d 580, 307 N.E.2d 275.) Although we are specifically concerned in this case with the intentions and purposes underlying the 1968 amendment of section 14—2 of the eavesdropping statute, the extensive history of this legislation, both prior and subsequent to the 1968 revisions, is relevant to our interpretation and construction of this amendment.

The General Assembly has enacted numerous prohibitions against and restrictions upon eavesdropping since the first antiwiretapping statute was passed in 1895. (Ill. Ann. Stat., ch. 38, art. 14, Committee Comments, at 581 (Smith-Hurd 1972).) In 1957 a comprehensive eavesdropping statute was passed which was the forerunner of the statute applicable

in this case. (See Ill. Rev. Stat. 1961, ch. 38, pars. 206.1 to 206.5.) The Committee Comments accompanying a 1962 revision of the 1957 eavesdropping statute note that the purpose of legislation in this area has "been to protect the privacy of the individual, the right to which is considered by many to be one of the fundamental civil liberties of our system." (Ill. Ann. Stat., ch. 38, art. 14, Committee Comments, at 581 (Smith-Hurd 1972).) The eavesdropping statute enacted in 1957, revised in 1962, 1968 and again in 1976, provides a comprehensive scheme of protection against unwarranted intrusions into the lives of the people of Illinois by means of electronic surveillance. The statute establishes a crime of eavesdropping, provides both criminal and civil penalties for the commission of the crime and declares that any evidence obtained in violation of the act will be inadmissible in judicial, administrative, or legislative proceedings.

Section 14—2 of the statute sets out the elements of the offense of eavesdropping. Under the 1957 enactment and 1962 revision a person committed the crime of eavesdropping if he used an eavesdropping device to hear or record any part of an oral conversation without the consent of any party thereto. (See Ill. Rev. Stat. 1957, ch. 38, par. 206.1; Ill. Rev. Stat. 1963, ch. 38, par. 14—2.) Thus it was a violation of the statute to monitor or record a conversation unless all parties to the conversation consented and any evidence obtained as a result of electronic surveillance without the consent of all parties under surveillance was inadmissible in a criminal proceeding. (*People v. Kurth*, 34 Ill. 2d 387, 216 N.E.2d 154.) Section 14—2 was amended in 1968 to prohibit eavesdropping and the use of evidence obtained through eavesdropping unless the monitoring or recording of a conversation was done with the consent of one of the parties to the conversation and at the request of a State's Attorney. (Ill. Rev. Stat. 1969, ch. 38, par. 14—2.) Section 14—2 was again amended in 1976 to prohibit the surveillance of any conversation unless it is undertaken with (1) the consent of all parties to the conversation, or (2) the consent of at least one party to the conversation and with the approval of a court pursuant to article 108A of the Code of Criminal Procedure. (Ill. Ann. Stat., ch. 38, par. 14—2, at 327 (Smith-Hurd 1978 Supp.).) Article 108A establishes a comprehensive procedure for obtaining judicial approval for the use of an eavesdropping device. The statute requires that requests to conduct electronic surveillance where one party has consented to the surveillance be accompanied by a detailed written application, a finding by the court that there is reasonable cause for believing that a party to the conversation to be monitored has committed or is about to commit a felony, and a written order approving the request specifying the identity of the consenting party, the identity of other parties in the conversation and the specific time period during which the surveillance is

to take place. Ill. Ann. Stat., ch. 38, pars. 108A—3 to 108A—5 (Smith-Hurd 1978 Supp.).

This comprehensive scheme regulating electronic surveillance is considerably more strict than similar State statutes. (ABA Approved Draft Standards Relating to Electronic Surveillance, General Commentary, at 20 (1971).) The requirements of the Illinois eavesdropping act are also more demanding than both the ABA Standards relating to electronic surveillance and the United States Constitution. The ABA Standards approve the surveillance of communications where one party to the communication has consented to the surveillance and the United States Supreme Court has held that the fourth amendment does not prohibit surreptitious monitoring and recording of conversations to which a party to the conversation has consented. (ABA Standards Relating to Electronic Surveillance, Standard 4.1 (approved draft 1971); *United States v. White*, 401 U.S. 745, 28 L. Ed. 2d 453, 91 S. Ct. 1122.) The strictness of the present Illinois eavesdropping statute and the close attention paid by the General Assembly to the problem of electronic surveillance over the past two decades reflects the Assembly's concern over the serious threat electronic eavesdropping presents to our most basic freedoms. This concern is also reflected in the Constitution of 1970 which provides that "[t]he people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy, or interceptions of communications by eavesdropping devices or by other means." (Ill. Const. 1970, art. I, §6.) The drafters of the numerous versions of the eavesdropping statute and the framers of the 1970 Constitution were, of course, not unmindful of the fact that electronic surveillance is an important and effective tool of law enforcement and that an appropriate balance must be drawn between the legitimate needs of law enforcement and every individual's right to privacy. (See Ill. Ann. Stat., ch. 38, par. 14, Committee Comments (Smith-Hurd 1972).) The extensive history of legislative prohibitions against eavesdropping in Illinois, however, clearly indicates that the General Assembly has adopted a balance in favor of the right to privacy and has placed the burden on law enforcement to justify the need to conduct electronic surveillance.

■■ The 1968 version of section 14—2 allows eavesdropping only with the consent of a party to the communication to be monitored and at the request of a State's Attorney. The trial court concluded that the requirements of section 14—2 were not satisfied in this case since the initial request for electronic surveillance came from the Illinois Bureau of Investigation and not the State's Attorney. We do not believe the legislature intended that the language of section 14—2 have such a literal application. Criminal investigations are the province of law enforcement agencies. As a practical matter, the vast majority of requests by State's

Attorneys for eavesdropping will originate with a request or recommendation of a law enforcement agency. We believe the legislature's intention was that any electronic surveillance be conducted with the authorization and under the close supervision of a State's Attorney. This interpretation both comports with the practical realities of law enforcement and yet insures that the actual implementation of the legislative balance between police needs and privacy rights be under the control of an officer of the court.

However, we do not agree with the State's suggestion that section 14—2 vests the State's Attorney with virtually unlimited discretion in requesting electronic surveillance. The State cites the following passage from the supreme court's decision in *People v. Richardson*, 60 Ill. 2d 189, 328 N.E.2d 260, in support of its contention that the legislature intended that the nature and form of requests for eavesdropping be within the sole discretion of a State's Attorney.

> "The office of the State's Attorney has historically 'involved the exercise of a large measure of discretion in the many areas in which State's Attorneys must act in the performance of their duties in the administration of justice.' [Citation.] It does not violate due process to leave with the State's Attorney the decision whether or not to record conversations with the consent of one of the parties to them." 60 Ill. 2d 189, 195.

■■ The court in *Richardson*, however, was concerned with the constitutionality of vesting a State's Attorney with the discretion to request eavesdropping and did not consider the question of whether the legislature intended to place any limitations on the exercise of that discretion. We believe that the history of the eavesdropping statute clearly indicates that the General Assembly did not intend State's Attorneys to have unbridled discretion in this area. (See *People v. Porcelli*, 25 Ill. App. 3d 145, 323 N.E.2d 1.) At a minimum we believe that the revision of section 14—2 applicable here required that any eavesdropping be strictly limited to those persons and times specified by the State's Attorney. Any less restrictive interpretation of this provision would in effect allow a delegation of the State's Attorney's discretion under the statute to other law enforcement agencies in clear contradiction to the intent of the General Assembly.

A similar conclusion was reached by the First District Appellate Court in *People v. Porcelli*, 25 Ill. App. 3d 145, 323 N.E.2d 1, in which the court upheld the trial court's suppression of a recorded conversation. The State's Attorney had authorized a large number of people to use an eavesdropping device to monitor and record any conversation between an Officer Strutz and any other person during a period of one week. The appellate court determined that this authorization was too broad

and exceeded the requirements of the eavesdropping statute. The State argues that the imposition of any restrictions on requests by State's Attorneys for eavesdropping is tantamount to establishing a warrant requirement for such requests and placing the State's Attorney in the role of a magistrate. In support of this contention, the State cites decisions of the Second and Fourth District Appellate Courts which criticize the holding in *Porcelli*. The Fourth District Appellate Court in *People v. Knight*, 28 Ill. App. 3d 232, 235, 327 N.E.2d 518, concluded "that the kind of requirements, similar to those necessary for a search warrant, which the court in *Porcelli* held necessary for a valid authorization, are not mandated by the eavesdropping statute." In *People v. Klingenberg*, 34 Ill. App. 3d 705, 710, 339 N.E.2d 456, the Second District Appellate Court determined that a State's Attorney's request for eavesdropping under section 14—2 of the statute need not have the degree of specificity required by the United States Constitution for electronic surveillance of conversations to which no person has consented. The court in *Porcelli*, however, did not hold that the eavesdropping statute established a warrant type requirement for eavesdropping authorizations and we do not suggest such a requirement here. The essence of the general warrant requirement of the fourth amendment for searches and seizures is a showing of probable cause to a neutral and detached magistrate. Requiring the State's Attorney to identify the individuals involved in a proposed eavesdropping and the approximate time of surveillance is far different from requiring a State's Attorney to show there is probable cause to believe that the subject of a proposed surveillance has or is about to commit a felony. We note that the current eavesdropping statute does establish a warrant procedure requiring judicial approval of requests to conduct electronic surveillance which must be based on a finding that there is reasonable cause for believing that a party to the conversation to be monitored has committed or is about to commit a felony. (Ill. Ann. Stat., ch. 38, par. 14—2 (Smith-Hurd Supp. 1978).) We do not believe it was the intention of the General Assembly to impose such a requirement in the 1968 version of the statute. The 1976 amendment of section 14—2, however, is relevant to our construction of the earlier version of that section. (*People ex rel. Hanrahan v. White*, 52 Ill. 2d 70, 285 N.E.2d 129, *cert. denied*, 409 U.S. 1059, 34 L. Ed. 2d 511, 93 S. Ct. 562; *Creel v. Industrial Com.*, 54 Ill. 2d 580, 584, 301 N.E.2d 275.) We believe that the strict requirements imposed on requests for eavesdropping by the 1976 amendment evidence a long-standing legislative policy to severely limit the use of electronic eavesdropping in Illinois. With regard to the version of section 14—2 at issue here we believe this policy requires that State's Attorneys maintain close supervision and control over authorized eavesdropping. The interpretation of section 14—2 urged by the State

would allow State's Attorneys to offer merely symbolic approval of requests for eavesdropping without restricting the person or conversation to be monitored or the times of surveillance. This interpretation is contrary to the legislative history and clear intent of the eavesdropping statute and amounts to an endorsement of clearly improper delegations of the authority and responsibility of State's Attorneys under section 14—2 to law enforcement agencies.

■■ There was some confusion in this case over whether the surveillance was conducted pursuant to the oral authorizations of State's Attorney Rice or his confirming memoranda. Agent Magnusen first testified he acted under the written authorizations, but later stated he was guided by the oral authorization. Nevertheless, he testified that the only limitations placed on the eavesdropping by the State's Attorney were those contained in the written authorization. These memoranda authorized any agent or agents of the Illinois Bureau of Investigation to use an electronic eavesdropping device to hear or record any conversation with the consent of any party to that conversation. These authorizations were too broad in that they failed to specifically identify the person conducting the surveillance and the persons to be surveilled. The purported written authorizations were all prepared by the Illinois Bureau of Investigation agents and simply handed to State's Attorney Rice for his signature. On two of the occasions the surveillances were conducted by a private individual who was given absolutely no instruction regarding any restriction on the persons or conversations to be monitored. Even assuming that the State's Attorney orally authorized each surveillance and was kept informed of the progress of each, it is apparent from the circumstances of this case that the State's Attorney did not maintain the close supervision and control over the eavesdropping contemplated by the statute. In fact, it appears that the authorizations given by the State's Attorney were little more than token gestures and that the nature of the surveillance to be undertaken was for all practical purposes left entirely to the discretion of the Illinois Bureau of Investigation agents. We hold that the eavesdropping in this case did not satisfy the standards required by the eavesdropping statute and that the tape recordings were properly suppressed by the trial court.

The trial court also ordered the suppression of "any testimony which originated from the use of the tapes." At the close of the hearing on the motion to suppress, the trial judge indicated that any testimony not derived from the tapes would be permitted, but that the testimony of Ronald Fuentes would not be allowed since it was the product of the illegal surveillance. The State contends that the suppression of the Fuentes testimony was erroneous since it did not result from the exploitation of any illegality. Section 14—5 of the eavesdropping act

provides in pertinent part that "[a]ny evidence obtained in violation of this Article is not admissible in any civil or criminal trial." (Ill. Rev. Stat. 1975, ch. 38, par. 14—5.) The Illinois Supreme Court has held that section 14—5 expressly adopts the "fruit of the poisonous tree" doctrine which requires the suppression of any evidence obtained as a result of a violation of the eavesdropping act. (*People v. Maslowsky*, 34 Ill. 2d 456, 464, 216 N.E.2d 669.) A precise statement of this doctrine appears in *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407:

> "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " 371 U.S. 471, 487-88, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407.

■■ The "fruit of the poisonous tree" doctrine was developed to prevent the admission of evidence indirectly obtained as a result of information acquired through an unlawful search and seizure. (See Annot., 50 A.L.R. 2d 531, 569, §7[c] (1956).) This exclusionary rule applies only to information which is derived from a process initiated by the unlawful act and does not extend to evidence obtained from an independent source. (See 29 Am. Jur. 2d *Evidence* §415 (1967).) The question presented then, is whether the testimony of Ronald Fuentes was produced through means sufficiently independent of the violation of the eavesdropping act to purge the testimony of the taint of that violation.

The First District Appellate Court was faced with a similar problem in *People v. Porcelli*, 25 Ill. App. 3d 145, 323 N.E.2d 1. In that case defendant Porcelli represented himself to a Glencoe policeman as an attorney for an individual arrested by the policeman for driving a motor vehicle while under the influence of intoxicating liquor. Porcelli called the arresting officer, Russel Strutz, and offered him $300 to alter his report on the DWI charge. Strutz told Porcelli that he would call him back after discussing the matter with his chief of police. Strutz then informed the State's Attorney of this bribe offer and consented to having his telephone conversation with Porcelli monitored and recorded. The recording of the Porcelli conversation was found by the appellate court to be a violation of the eavesdropping act and suppressed; but the court held that Officer Strutz could nevertheless testify to the matters discussed in the conversation. In holding that this testimony could not be excluded under the "fruit of the poisonous tree doctrine," the court noted that:

> "Strutz did not telephone Porcelli just so that a recording could be made. It is true that he telephoned him from the State's

Attorney's office for this purpose, but he could have called him nevertheless. Porcelli had asked Strutz to let him know whether he would change his report; Strutz had agreed and was following through on his promise.* * *.

The telephone conversation occurred as a logical progression of Strutz' handling of the case. The conversation was motivated independently of the eavesdropping. There was no essential connection between the conversation and the eavesdropping and Strutz' testimony provides an independent source of its content. He was a participant in the conversation and his knowledge of what was said was not gained from the illegal recording." 25 Ill. App. 3d 145, 150.

■■ The State contends that the facts to which Ronald Fuentes would have testified were obtained in similar fashion and thus derived from a source sufficiently independent to purge the testimony of the taint of the illegal surveillance. The Fuentes-Kezerian conversations, however, were not independently motivated but occurred only because they were arranged by Fuentes for the sole purpose of allowing Illinois Bureau of Investigation agents an opportunity to conduct an electronic surveillance. The source of Fuentes' testimony regarding these conversations, therefore, was not sufficiently independent of the illegal surveillance to escape the reach of the exclusionary rule contained in section 14—5 of the eavesdropping act and this testimony was properly suppressed by the trial court. The order of the trial court is affirmed.

Affirmed.

EBERSPACHER, P. J., concurs.

Mr. JUSTICE JONES, dissenting:

On the basis of my remarks in *People v. Mosley*, 63 Ill. App. 3d 437, filed July 13, 1978, I respectfully dissent.