THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
CEDELL MOSLEY, Defendant-Appellee.

Fifth District   No. 77-217

Opinion filed July 13, 1978.

G. MORAN, J., dissenting.

Clyde L. Kuehn, State's Attorney, of Belleville (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Edward Neville, of East St. Louis, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

The State appeals from an order of the trial court suppressing two tape recordings and the testimony of any person concerning either of the conversations contained therein. The principal issue on appeal is whether the trial court erred in finding that the State had not complied with the relevant portions of article 14 of the Criminal Code of 1961 (eavesdropping statute) in recording certain conversations involving defendant Cedell Mosley (Ill. Rev. Stat. 1975, ch. 38, par. 14—1 *et seq.*).

In March and April of 1976, the Belleville office of the Illinois Bureau of Investigation was engaged in the investigation of alleged payoffs from tavern owners to East St. Louis city officials. As a result of conversations on March 29 and April 12, 1976, between IBI agent George Murray and defendant Mosley, Director of Public Safety of the city of East St. Louis, the defendant was charged with bribery, intimidation, official misconduct and conspiracy to permit gambling. Tape recordings of these conversations were made with the consent of the agent. These tapes are the subject of the instant suppression order.

A hearing on the defendant's motion to suppress was conducted on February 25, 1977. The only witness examined during the hearing was Ronald Grimming, Special Agent Squad Leader of the IBI office mentioned above. Prior to that examination, counsel stipulated that in both instances the request for authorization to record was made orally by agent Grimming, and that the written authorizations for such were prepared by the IBI and signed by State's Attorney Robert Rice prior to the time of each recording.

Two exhibits were admitted at the hearing. Defendant's Exhibit 1 consisted of three pages of IBI interagency memoranda relating to the March 29 recording and a one-page written authorization for that taping addressed to agent Grimming and signed by the State's Attorney. The authorization was dated March 25, 1976. Exhibit 2 was substantially the same as exhibit 1, referring, however, to the April 12 recording.

It was established that the State's Attorney did not see the interagency memoranda or any writing other than the letters of authorization which he signed prior to the recording of either of the two conversations.

However, as noted above, he did have oral conversations with agent Grimming before he signed the authorizations. According to Grimming, the IBI's investigation had focused specifically on defendant prior to March 25. In the oral conversations seeking eavesdropping authority for both conversations, agent Grimming told the State's Attorney that he was seeking authority to record defendant Mosley. In fact, he only sought authorization as to the defendant for the March 29 date. The State's Attorney gave separate oral consent for the taping of both conversations with Mosley in addition to signing the written authorization forms.

Each of the written authorizations was identical except for the date and time of surveillance. The following excerpt from the authorization of March 25 is sufficient to reveal the substance of both authorizations:

"This letter is to confirm the oral request made by St. Clair County State's Attorney Robert H. Rice on March 25, 1976 for an Agent or Agents of the Illinois Bureau of Investigation to use an electronic eavesdropping device to hear or record all or any part of any conversation with the consent of any one party to such conversation with the following limitations:

That said eavesdropping shall occur only between the hours of 6:00 a.m. on March 29, 1976 and 6:00 p.m. on March 29, 1976, unless further notification is received from this office; and that the eavesdropping shall occur within the boundaries of St. Clair County in Illinois.

Any information or evidence obtained through the use of said eavesdropping device, with the above limitations, shall be used or divulged only in a criminal proceeding."

The trial court granted defendant's motion to suppress the tape recordings and further ordered the suppression of "the testimony of any person concerning either such conversation." The court determined that the requests for surveillance were made by agents of the Illinois Bureau of Investigation and not the State's Attorney as required by the eavesdropping statute. The court's primary objection to the surveillance, however, was that the authorization was too broad in that it failed to identify the persons who were to be placed under surveillance. The court also emphasized the lack of any written evidence that Grimming had sought to use electronic surveillance on the defendant.

At the time the surveillance in this case took place, section 14—2 of the eavesdropping statute provided in pertinent part that:

"A person commits eavesdropping when he:

(a) Uses an eavesdropping device to hear or record all or any part of any conversation unless he does so with the consent of any one party to such conversation and at the request of a State's Attorney * * *." (Ill. Rev. Stat. 1975, ch. 38, par. 14—2(a).)

Section 14—5 of the statute provided in pertinent part that:

"Any evidence obtained in violation of this article is not admissible in any civil or criminal trial ° ° °." Ill. Rev. Stat. 1975, ch. 38, par. 14—5.

The State contends on appeal that neither the fourth amendment to the United States Constitution nor article 1, section 6 of the Illinois Constitution of 1970 compels this court to hold that section 14—2 of the eavesdropping statute requires a State's Attorney to issue a specific, written authorization for the use of eavesdropping devices. They assert that the "request" may be completely oral and that it need not have the type of specificity required by the federal constitution for eavesdropping to which no party has consented. The State also contends that the statute does not require that a State's Attorney initiate a request for the use of eavesdropping devices but only that such requests be subject to the authorization or consent of a State's Attorney. Finally, the State argues that even if the tape recordings were properly suppressed, the trial court erred in suppressing the testimony of the IBI agent as to the conversations.

Since 1961, Illinois has had several variations of section 14—2(a) providing for exceptions to the general ban on eavesdropping. (See Ill. Rev. Stat. 1961, 1969, 1977, ch. 38, par. 14—2.) The 1961 version (effective January 1, 1962) was interpreted by our supreme court to preclude admission of evidence obtained by eavesdropping devices unless the person against whom the evidence was being offered had consented to its recording. (*People v. Kurth*, 34 Ill. 2d 387, 216 N.E.2d 154.) In response to that holding, the general assembly amended section 14—2(a) in 1969 (P.A. 76-1110) to read as quoted above. Ill. Rev. Stat. 1975, ch. 38, par. 14—2(a).

Since the instant recordings were made prior to the July 1, 1976, effective date of the current version of section 14—2 (Ill. Rev. Stat. 1977, ch. 38, par. 14—2), the determination of the admissibility of the recordings must be judged on the basis of the provision enacted in 1969.

■■ That section simply provides that one does not commit the offense of eavesdropping if he records a conversation "with the consent of any one party to such conversation and at the request of a State's Attorney." By operation of section 14—5, a recording obtained in such a manner is admissible in a criminal trial.

■■ ■ It is apparent that the statute 'does not provide any specific limitations as to the content or form of a State's Attorney's request for the overhearing or recording of any conversation with the consent of any one party thereto. We find that the lack of enumeration was intended and that proof of the two stated requirements is all that is necessary to make a particular recording admissible. (*People v. Knight*, 28 Ill. App. 3d 232, 327 N.E.2d 518; *People v. Klingenberg*, 34 Ill. App. 3d 705, 339 N.E.2d

456; see also *People v. Richardson*, 60 Ill. 2d 189, 328 N.E.2d 260.) Neither the Federal nor the State constitution dictates a different interpretation of this clear and unambiguous statute.

■■ The trial court's apparent holding that the instant recordings must be suppressed because defendant was not named in the written "request" is in error. The statute does not provide for a written request specifically naming the defendant. It merely states that the recording must be made at the request of the State's Attorney. It is our belief that a request by the State's Attorney to record conversations to which one of the parties has consented, without naming any particular person who will be the subject of the surveillance is a sufficient request under section 14—2(a) (Ill. Rev. Stat. 1975, ch. 38, par. 14—2(a)). So long as the evidence establishes that such a request was made and that one of the parties to the conversation consented to the taping, the exception of section 14—2(a) is established, and the recording should be admitted. It is abundantly clear that both of these requirements were met in the instant case.

Any other interpretation would be impractical and unwarranted. In criminal investigations it is undoubtedly often the case that law enforcement officers have reasonable cause for believing that a serious crime has been or soon will be committed and that the officers will be involved in conversations revealing such without knowing precisely who will be making incriminating statements concerning the crime. Our interpretation of the statute should not be so strained as to prevent the admission of highly reliable evidence of crimes obtained under these circumstances. Even the current, more explicit eavesdropping statute (Ill. Rev. Stat. 1977, ch. 38, par. 14—1 *et seq.*; par. 108A—1 *et seq.*) contemplates the issuance of eavesdropping orders that do not state the persons to be surveilled. Ill. Rev. Stat. 1977, ch. 38, par. 108A—5(a)(2).

The statute as we have interpreted it does not violate either the Federal or State constitutions.

As our supreme court noted in *People v. Richardson*, the Supreme Court decision of *United States v. White*, 401 U.S. 745, 28 L. Ed. 2d 453, 91 S. Ct. 1122, stands for the proposition that warrantless, one-party consent eavesdropping is not a violation of the fourth amendment. In fact, the present technique may involve no "eavesdropping" in any proper sense of the term since the State did not use an electronic device to listen in on a conversation it could not have otherwise heard. *Lopez v. United States*, 373 U.S. 427, 439, 10 L. Ed. 2d 462, 470, 83 S. Ct. 1381, 1388.

Since under the *White* decision, one-party consent conversations could be recorded solely upon the decision of the police department, it is clear that our statute, which contains the added requirement of a request by a State's Attorney, cannot violate one's fourth amendment rights. *Richardson*, 60 Ill. 2d 189, 192-93, 328 N.E.2d 260, 264.

Moreover, it was established in *Richardson* that the framers of our new State Constitution did not intend to render eavesdropping with one-party consent or section 14—2(a) unconstitutional. Article 1, section 6 of the Illinois Constitution of 1970 merely prohibits "unreasonable ° ° ° interceptions of communications by eavesdropping devices or other means." This is a minimum guarantee against interceptions of communications (6 Record of Proceedings, Sixth Constitutional Convention 30) (hereinafter Proceedings) which was primarily directed at recording of conversations without the consent of any party; one-party consent recordings were accepted by the framers as reasonable and beyond the scope of the section's sweep. See 6 Proceedings 1523-45.

Our view that a specific reference to the defendant is not necessary in order to make valid a State's Attorney's request for use of eavesdropping devices is supported by the case of *People v. Knight*, 28 Ill. App. 3d 232, 327 N.E.2d 518, and dicta in *People v. Klingenberg*, 34 Ill. App. 3d 705, 339 N.E.2d 456. But see *People v. Porcelli*, 25 Ill. App. 3d 145, 323 N.E.2d 1.

In *People v. Knight* the Fourth District Appellate Court held that a State's Attorney's request to use audio-visual recording equipment whenever anyone was questioned or tested at the county jail concerning a charge of driving while intoxicated was a valid request under section 14— 2 of the eavesdropping statute (Ill. Rev. Stat. 1973, ch. 38, par. 14—2). The request by its very nature could not avert to the particular defendant involved, nevertheless, the court found it sufficient under the statute, holding that the kind of requirements, similar to those necessary in a search warrant, which the First District Appellate Court in *People v. Porcelli* held necessary for a valid authorization, were not mandated by the eavesdropping statute.

A similar factual situation was presented to the Second District Appellate Court in *People v. Klingenberg*. Although the court found that the trial court's suppression of the video portion of an audio-visual surveillance of a suspect arrested for driving while intoxicated was error because there had been no "eavesdropping" within the meaning of the statute, the court went on to find that the general surveillance request of the State's Attorney was sufficient under the statute and that the request need not have the specificity required by the Federal Constitution for eavesdropping to which no party consented. *Klingenberg*, 34 Ill. App. 3d 705, 710, 339 N.E.2d 456, 460-61.

In *People v. Porcelli*, the First District Appellate Court found that under certain unenumerated "standards required by Illinois law," a written authorization letter that did not state the persons to be surveilled or the operators of the eavesdropping equipment and allowed

surveillance during one week's time was too broad. The court felt that such finding was required because the statutory restraints on electronic eavesdropping and the mandate of our State Constitution "demand the strict construction of the statute and coordinately, the equally strict scrutiny of all purported consents and requests. * * *" 25 Ill. App. 3d 145, 149, 323 N.E.2d 1, 4.

The *Porcelli* interpretation was rejected by the courts in *Knight* and *Klingenberg*, and rightfully so. Its rationale was undercut by *Richardson's* pointed remarks concerning our constitutional provision, and, although eavesdropping is indeed a criminal offense, the statute provides for an exception which was clearly present both in *Porcelli* and here. Moreover, even though the First District still pays lip service to *Porcelli*, it since has approved a request that mentioned only one of two co-defendants and did not specify who would operate the eavesdropping device. *People v. Marlow*, 39 Ill. App. 3d 177, 350 N.E.2d 215.

Even if we were to read into the revision of section 14—2 applicable here the requirement that eavesdropping be strictly limited to those persons and times specified in the request, the instant recordings would still be admissible since the record clearly establishes that the requests were directed at the defendant and the recordings were obtained within the limited hours specified in the written requests. Agent Grimming specifically sought permission to tape defendant prior to both dates in his conversations with the State's Attorney. The State's Attorney in turn orally authorized such tapings and executed the written authorizations to confirm his oral requests.

The trial court was misguided in placing primary emphasis on the IBI memoranda which the State's Attorney never saw. Although it is true that only the memoranda as to the April 12 taping mentioned defendant, such fact cannot serve to negate the clear testimony of Grimming concerning the oral exchanges that occurred prior to the taping. Moreover, as we have already stated, whether defendant was singled out in a request is irrelevant under the statute.

■■ As is suggested by our interchangeable use of the terms "request," "authorization" and "consent," we disagree with the trial court's conclusion that section 14—2 requires the initial request for eavesdropping originate with the State's Attorney's office. We do not believe the legislature intended the language of section 14—2 to have such a literal interpretation. Criminal investigations are the province of law enforcement agencies, and it is those agencies which will ordinarily be possessed of the information that will indicate the efficacy of eavesdropping. Consequently, the State's Attorney will in most instances be acting upon recommendations from such agencies. We can only

believe that the legislature merely intended that eavesdropping be conducted with the authorization or approval of the State's Attorney. Any other interpretation would be senseless and ignore the practical realities of criminal investigations.

■■ Since the tape recordings were improperly suppressed, it undoubtedly follows that the suppression of "the testimony of any person concerning either such conversation" was error. We note, however, that under the doctrine of the "fruit of the poisonous tree," which our supreme court has expressly held applicable to evidence obtained as a result of a violation of the eavesdropping statute (*People v. Maslowsky*, 34 Ill. 2d 456, 464, 216 N.E.2d 669), the testimony of agent Murray about the conversations would have been admissible even if the tape recordings were properly suppressed. The clearest and certainly most famous statement of this doctrine appears in *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407:

> "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " 371 U.S. 471, 487-88, 9 L. Ed. 2d 441, 445, 83 S. Ct. 407, 417.

The concern of this doctrine is to prevent the admission of evidence "obtained from or as a consequence of lawless official acts, not evidence obtained from an 'independent source.' " *Costello v. United States*, 365 U.S. 265, 280, 5 L. Ed. 2d 551, 561, 81 S. Ct. 534, 542; 31A C.J.S. *Evidence* §187, at 501 (1964).

In the instant case, the conversations between defendant and agent Murray occurred as a result of Murray's investigation of the alleged payoffs. They would have occurred even if he had not received approval to carry a recorder on his person, and consequently, his testimony was derived from a source completely independent of the recordings and was admissible without regard to the legality of the tapings. The evidence at the suppression hearing clearly established that Murray had numerous conversations with tavern owners during the course of his investigation and that one owner, prior to March 25, arranged for the 29th a meeting between Murray and defendant "so that Murray could become known to influential people." It was only subsequent to this that authorization to tape was obtained. Similarly, the second conversation could not be realistically viewed as being a consequence of the eavesdropping rather than the contact made pursuant to Murray's investigation.

For the stated reasons, we reverse the suppression order of the circuit court of St. Clair County and remand this cause for further proceedings.

Reversed and remanded.

WINELAND, J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:
I dissent on the basis of the opinion of this court in *People v. Kezerian,* No. 77-260, filed July 13, 1978.