THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* JAMES C. SATEK, Defendant-Appellee.

First District (4th Division)   No. 78-251

Opinion filed October 18, 1979.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Francis X. Speh, Jr., Assistant State's Attorneys, of counsel), for the People.

Constantine P. Xinos, of Chicago, for appellee.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The defendant, James C. Satek, was indicted for armed robbery. The trial court suppressed certain testimony of James Poghen, Jr., a prospective witness for the State in the defendant's trial, after finding that

the testimony was obtained in violation of the Illinois eavesdropping statute. The evidence in this record indicates that Poghen participated in the robbery with the defendant. The State appeals the suppression of Poghen's testimony.

The portions of the Illinois eavesdropping statute (Ill. Rev. Stat. 1973, ch. 38, par. 14—1 *et seq.*) relevant to this appeal are as follows:

"A person commits eavesdropping when he:

(a) Uses an eavesdropping device to hear or record all or any part of any conversation unless he does so with the consent of any one party to such conversation and at the request of a State's Attorney; * * *." Ill. Rev. Stat. 1973, ch. 38, par. 14—2(a).

"Any evidence obtained in violation of this Article is not admissible in any civil or criminal trial * * *." Ill. Rev. Stat. 1973, ch. 38, par. 14—5.

"The following activities shall be exempt from the provisions of this Article:

* * *

(d) Recording or listening with the aid of any device to any emergency communication made in the normal course of operations by any * * * local law enforcement agency * * *." Ill. Rev. Stat. 1973, ch. 38, par. 14—3(d).

The State denies that the eavesdropping was illegal. Further, it denies that the defendant had standing to protest the eavesdropping of Poghen, a third party. Finally, it asserts that even if the eavesdropping was illegal, and even if the defendant has standing under the statute, Poghen's testimony should not be restricted because he had first hand knowledge of the robbery, independent of the recording.

The evidence at the hearing on the motion to suppress consisted of testimony by village of Bridgeview police officer, Kenneth Osterman, and a stipulation as to the testimony which would be given by William Rasberry, a taxicab driver who witnessed the robbery.

If called as a witness, Rasberry would have testified that he was in his taxicab at a drive-in Photomat store on December 31, 1974. The persons in the truck in front of him were acting suspiciously and, when they drove away, Rasberry asked the woman at the booth if she had been robbed. She responded affirmatively and Rasberry followed the truck. The two men fled from the truck after driving some distance. Rasberry was still watching the truck when the police came along and Rasberry told them in which direction the robbers had gone. The police located Poghen within five minutes, near a private residence. When asked by a police officer what he was doing there, he said, "I've come to visit someone at that house." He said he was looking for a friend from work but he was unable to remember the friend's name. The officer went up to the house and rang

the door bell. A woman answered the door and the police asked if she knew Poghen. She said she had never seen him before. Poghen was arrested and charged with the armed robbery of the Photomat store, but he was never indicted. When Poghen was searched, $81 was found in his sock. The robbery proceeds amounted to $185.

Osterman testified that Poghen was arrested and taken to the village of Bridgeview police station about 5 p.m. on the day of the robbery. He was put in the lockup and, about half an hour later, placed in a lineup where he was identified by Rasberry. Poghen did not make any comment when he told that he had been identified. About an hour later, Osterman asked Poghen if he wanted to make a phone call. He responded affirmatively and was taken to Osterman's office to make the call.

Osterman testified that there are no public phones at the police station. All calls are automatically recorded on the station's emergency call system. The recording machine makes a beeping sound every 10 or 15 seconds which indicates to the speaker that the telephone conversation is being taped.

Osterman's office, from where the call was made, measures approximately 9' by 9'. Poghen was not left alone during the phone call. Either Osterman or another policeman was in the room the entire time. Osterman heard Poghen mention "mother" and also heard the name "Jim." The record contains no further information about the contents of the tape. Poghen was put back into the lockup. About half an hour later Osterman talked to him again. Poghen said he always put his money in his sock because he was afraid of being robbed, and that when he was arrested he was on his way to visit a friend from work, but that he could not remember the friend's name. Osterman told him the woman who lived in the house outside of which he was arrested said "no such person" lived in the area. Osterman asked Poghen about the "Jim" referred to in the phone conversation; Poghen continued to maintain his silence.

Poghen's personal property was inventoried and Osterman came across a photograph with the name "Jim" written on the back. Poghen was confronted with this photograph, asked if that was the "Jim" he had referred to during the phone conversation, and was also told that the call had been recorded. Poghen then admitted his involvement in the crime and said "Jim" was Jim Satek, Poghen's ex-brother-in-law. The identity of the defendant was not known to the police until this time.

Osterman also testified that he did not listen to the recording of the conversation until a day or two after the confession. The trial judge stated that he did not believe this testimony. The recording was routinely erased at the police station, prior to the hearing, when other calls were recorded over it.

The State's first argument is that the eavesdropping was legal because it occurred as part of an emergency communications system. (Ill. Rev. Stat. 1973, ch. 38, par. 14—3(d).) It claims the legislature must have realized that emergency call systems would sometimes record a non-emergency call, and that occasional, inadvertent tapings of nonemergency calls should be encompassed by the exception. The State also argues that Poghen should have realized the call was being recorded because a beeping tone occurred every few seconds.

■■ We are not persuaded by these arguments. The exception applies only to "emergency communication[s] made in the normal course of operations" by police departments and other institutions dealing in emergency services. Even if the State's "inadvertence" argument were to be accepted in regard to incoming calls, we cannot believe the legislature intended that an outgoing call, made from a police station by a private person for private purposes, would be a call made in the normal course of operations by a police department.

■■ We are similarly unconvinced by the State's argument that Poghen should have known his conversation was being recorded because of the beeping tone which is built into the system. Assuming that Poghen did in fact "know" the conversation was being recorded, a separate question is whether such knowledge would amount to a waiver of his rights under the statute. We believe the question must be answered in the negative. The statute contains no indication that its protections may be waived in the absence of express consent, and "knowledge" is not synonymous with "express consent."

The State's next argument concerns that portion of the statute which says that "[a]ny evidence obtained in violation" of the statute is not admissible in any criminal trial. (Ill. Rev. Stat. 1973, ch. 38, par. 14—5.) Its contention is that "any evidence" is modified by requirements that the person seeking suppression of the evidence have standing comparable to that required under the fourth amendment to the United States Constitution. The State reasons that *People v. Maslowsky* (1966), 34 Ill. 2d 456, 216 N.E.2d 669, requires that conclusion. The defendant responds that the exclusion of "any evidence" from "any trial" means exactly that, without any modification. Both parties agree that this action to exclude the evidence is based solely on the Illinois eavesdropping statute. There is no allegation that this is a violation of a constitutional nature. The defendant would have no standing under the fourth amendment. See *Alderman v. United States* (1969), 394 U.S. 165, 22 L. Ed. 2d 176, 89 S. Ct. 961.

In *Maslowsky*, the defendants argued that incriminating tape recordings should be suppressed because the recording violated their

constitutional rights and the Illinois eavesdropping laws. It was the State's position in *Maslowsky* that the defendants lacked standing to protest the recording because they had not sworn that they were participants to the recorded conversations. The court found the evidence sufficiently identified the defendants as parties to the recorded conversations and that they consequently had a right to fourth amendment protections against the use of the recordings in their trial.

In the case before us the State asserts that since the *Maslowsky* court ruled on the constitutional question without distinguishing between it and the claimed violation of the eavesdropping statute, the *Maslowsky* ruling implies identical standing requirements for each. It also argues that if fourth amendment standing is not required by the statute, the *Maslowsky* court would have disposed of the issue on that basis.

We believe that such a broad reading of *Maslowsky* is unwarranted. That court never addressed or mentioned the question of the right of a party, not a participant in a conversation, to invoke the protection of the eavesdropping statute. Rather, it resolved a factual conflict presented by the State's contention that the evidence failed to prove the defendants were parties to the conversation. Once that factual issue was settled, it was unnecessary for the court to consider the question of third party standing. Under these circumstances it would be unreasonable to find *Maslowsky* controlled a situation never examined, that of third party standing.

In support of its argument that fourth amendment standing requirements should be read into the statute, the State also relies on legislative intent. Because the statute's express purpose, like that of the fourth amendment, is to protect the privacy of the individual, the State argues the same standing principles should be applicable to both.

An analysis of the Committee Comments to the statute (Ill. Ann. Stat., ch. 38, par. 14—1 *et seq.*, Committee Comments, at 581 (Smith-Hurd 1972)) does not justify the imposition of fourth amendment restrictions onto it. The Committee Comments note that "[t]he reason for this legislation has, of course, been to protect the privacy of the individual * * *." However, the State fails to point out that the Committee also wrote:

> "A comprehensive statute prohibiting all types of eavesdropping by electronic means was passed in 1957. [Citation.] Today Illinois is one of the very few states which unqualifiedly prohibits all electronic eavesdropping."

Although no Illinois reviewing court has considered the precise issue before us, the statute has been described as "increas[ing] the protection of [the defendant's] rights * * *." (*People v. Richardson* (1975), 60 Ill. 2d 189, 195, 328 N.E.2d 260, 264.) We also note that the *Maslowsky* court, although not addressing the issue now before us, did resolve other

questions about the eavesdropping statute which we find instructive. One of the State's arguments in *Maslowsky* was that the exclusionary provision of the statute was not applicable where a governmental agency did not initiate, authorize or consent to the procurement of the evidence. The State, as in this case, relied on an analogy to the fourth amendment. The court responded:

> "The short answer is that by the enactment of the eavesdropping statute the legislature expanded the exclusionary rule beyond the scope of the rule laid down in the *Burdeau* [*v. McDowell* (1921), 256 U.S. 465, 41 S. Ct. 574, 65 L. Ed. 1048] case. While constitutional doctrine might only require the exclusion of evidence unlawfully obtained by police officers, the legislature has exercised its prerogative and required the exclusion of evidence obtained by any person in violation of the statute." (*Maslowsky* (1966), 34 Ill. 2d 456, 464, 216 N.E.2d 669, 674.)

And when the State argued in *Maslowsky* that the "fruit of the poisoned tree" doctrine should not apply to the statute, the court disagreed. In other words, when the State urged a constitutional doctrine which would limit the effect of the statute, the court rejected it, and when the State argued against a constitutional principle which would expand the scope of the statute, the *Maslowsky* court adopted it. The Illinois Supreme Court has thus chosen the more expansive reading of the eavesdropping statute when twice confronted with issues concerning its breadth. Our conclusion is in accord with this general viewpoint.

In light of the unambiguous language of the statute, directing that "[a]ny evidence" obtained in violation of the statute is not admissible "in any civil or criminal trial" (Ill. Rev. Stat. 1973, ch. 38, par. 14—5), we conclude that the defendant has standing under that statute to attempt to suppress the evidence emanating from the illegal recording.

In answer to the defendant's petition for rehearing, the State calls our attention to an Illinois statute, effective July 1976, entitled "Judicial Supervision of the Use of Eavesdropping Devices." (Ill. Rev. Stat. 1977, ch. 38, art. 108A—1.) This statute was not raised either at the hearing below or in the parties' initial appellate briefs. The statute, which is modeled in large part upon the Federal statute entitled "Wire Interception and Interception of Oral Communications" (18 U.S.C. §2510 *et seq.* (1976)), provides that the State's Attorney may authorize an application to a circuit judge for an order authorizing the use of an eavesdropping device by a law enforcement officer or agency where one party to the conversation has consented to the monitoring. (Ill. Rev. Stat. 1977, ch. 38, par. 108A—1.) The provision the State is concerned with states that "[a]ny aggrieved person in any judicial or administrative proceeding may move to suppress the contents of any recorded conversation or evidence derived therefrom" on the basis of various

enumerated grounds. Ill. Rev. Stat. 1977, ch. 38, par. 108A—9.

The State argues section 108A—9 limits the class of persons who have standing to move to suppress under the older eavesdropping statute (Ill. Rev. Stat. 1973, ch. 38, pars. 14—1 *et seq.*), and that "aggrieved person" refers only to a person who is a party to the conversation in question or is the person against whom the interception was directed. While the Federal statute defines "aggrieved person" in those terms (18 U.S.C. (1976), §2510(11)), the Illinois drafters did not include a definitional section in our statute and the Illinois law is silent concerning the meaning of an "aggrieved person."

We have been unable to locate any information concerning the intended relationship between Illinois' two distinct statutory articles dealing with electronic eavesdropping. However, it would offend logic to hold that standing requirements under the two statutes are not the same.

As noted earlier, our supreme court has consistently given the older statute an expansive reading in protecting the rights of defendants. As also noted above, Illinois has traditionally been restrictive in its sanctioning of electronic eavesdropping. Further evidence of this attitude is apparent in the Judicial Supervision of the Use of Eavesdropping Devices article, where authorization for eavesdropping is available *only* when one party consents to it. (Ill. Rev. Stat. 1977, ch. 38, par. 108A—1.) The Federal statute, after which Illinois' was patterned, presents a stark contrast by permitting judicial authorization of eavesdropping even where no party to the conversation has consented.

For these reasons, we decline the State's invitation to hold that standing to suppress an illegal recording in Illinois is as narrow as under the Federal statute or under the fourth amendment to the United States Constitution.

The final issue concerns the State's contention that Poghen should be allowed to testify because he had first hand knowledge of the robbery, independent of the recording. This issue generated a great deal of discussion in the trial court and a further examination is needed of the exact finding of that court. Following extensive argument by counsel and rigorous questioning by the court, the trial judge ruled that whatever testimony Poghen could give "at this point" would be the fruit of the poisonous tree represented by the illegal recording. Further, the court said that Poghen would not be allowed to take the stand and tell what "actually occurred." We believe the court intended to restrict Poghen's testimony to those events occurring between the time that he was approached on the street by the police until the time that he made the telephone call. All other evidence from Poghen was suppressed.

Whether the defendant's efforts to suppress the testimony which Poghen might give at his trial will be successful depends upon whether

that testimony is "fruit of the poisonous tree" or whether it was derived from an untainted source. (See, *e.g., People v. Porcelli* (1975), 25 Ill. App. 3d 145, 323 N.E.2d 1.) In *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407, the court wrote:

> "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." (371 U.S. 471, 487-88, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417.)

The Illinois Supreme Court has held that this principle applies to Illinois' eavesdropping statute. (*Maslowsky.*) The issue thus is whether Poghen's confession and the testimony which could be derived therefrom has been obtained by "exploitation" of the illegal recording.

■■ When the defendant has established a "primary illegality" and shows its connection to what are alleged to be the fruits of the illegality, the burden then shifts to the prosecution to establish "that the challenged evidence was obtained by means sufficiently distinguishable to be purged of the primary taint." *People v. Robbins* (1977), 54 Ill. App. 3d 298, 305, 369 N.E.2d 577, 581; *People v. Wilson* (1975), 60 Ill. 2d 235, 326 N.E.2d 378.

■■ We believe that the evidence was sufficient for the court to determine that the primary illegality, the taping of the telephone call, tainted the prospective testimony of Poghen about anything other than events occurring between the time that he was approached on the street by the police until the time that he made the telephone call, and to further conclude that Poghen's testimony was not obtained by means sufficiently distinguishable to be purged of that taint. The court had a right to draw this conclusion from the evidence that Poghen's confession occurred immediately after he was told that the phone call had been recorded, whereas he had previously been steadfast in his refusal to talk, and from the credibility determination that Osterman was lying when he said he had not listened to the tape until a day or two after the confession. It was the State's burden to show that the challenged evidence was obtained by means sufficiently distinguishable to be purged of the primary taint. The State did not meet that burden.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

LINN and ROMITI, JJ., concur.