THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
JOHN GERVASI *et al.*, Defendants-Appellees.

First District (1st Division)    No. 79-820

Opinion filed November 24, 1980.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Joel A. Eisen-Stein, Assistant State's Attorneys, of counsel), for the People.

Neville, Pappas & Mahoney, of Chicago (Ronald F. Neville, George Pappas, and Anthony J. Onesto, of counsel), for appellee John Gervasi.

Sam Adam and Edward M. Genson, both of Chicago, for appellee Michael Ettinger.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Defendants John Gervasi and Michael Ettinger were charged by indictment with bribery, solicitation, and conspiracy. The evidence which implicated the defendants included telephonic and in-person conversations between defendants and a police officer. All of the telephone conversations were made from or received at the officer's home. All of the in-person conversations took place at the officer's home. The telephone conversations were overheard by court reporters who listened on an extension telephone from which the speaking device had been removed. The in-person conversations were overheard by court reporters without the use of any listening device. The reporters recorded all of the conversations on a stenographic machine.

Prior to trial, on defendants' motion, the trial court held that the altered extension phone, used in conjunction with a court reporter's stenographic machine, was an eavesdropping device within the contemplation of section 14—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 14—1). The court entered an order suppressing all of the transcripts of the overheard conversations, the testimony of the court reporters regarding the conversations they overheard, and the testimony of the police officer regarding the conversations he had with defendants. The State appeals that order.

We affirm in part and remand with directions.

On appeal, the State argues that the trial court erred (1) in determining that an eavesdropping device was used, and (2) in suppressing the following items of evidence: the transcripts of the telephonic and in-person conversations; the prospective testimony of Officer Furay and the court reporters regarding the telephonic conversations, and the prospective testimony of Officer Furay and the court reporters regarding the in-person conversations.

On October 8, 1977, Charles Soteras was arrested by Blue Island police officer Daniel Furay. Defendant Gervasi was called to the police station to represent Soteras. Gervasi told Furay that he would contact Furay in the near future. On November 21, 1977, Furay received a business card from Gervasi. Written on the back of the card was the

message "Danny, Going out of town Saturday, Sunday, Monday. Will return Tuesday afternoon. Could you please call, I would like to talk to you." Believing that he would be offered money to help Soteras in his pending criminal case, Furay contacted the Cook County State's Attorney's office and advised two assistant State's Attorneys of his suspicions.

At the time Furay contacted the State's Attorney to report the possible impropriety, Gervasi was on the list of candidates for associate judge of Cook County. The State feared that a request for judicial authorization to eavesdrop would result in a leakage to Gervasi of the fact that he was under investigation. So rather than obtaining judicial permission, the State decided to devise a scheme which it felt would enable it to eavesdrop without violating the statute requiring judicial authorization.

The facts concerning the manner in which the evidence was gathered by the State were presented to the trial court by stipulations of the parties. The stipulations disclose that between November 27 and December 19, 1977, defendant Gervasi had a total of 23 telephone conversations with Officer Furay. Within the same period, defendant Ettinger had six telephone conversations with Furay.

Of the 23 telephone conversations between defendant Gervasi and Furay, 3 were initiated by Furay from his home. The other 20 were initiated by Gervasi. On all 23 occasions, a shorthand reporter employed by the State's Attorney's office was present and listened to the conversations on an extension telephone in Furay's home. Each time, a reporter removed the speaking mechanism on the extension telephone and recorded the conversation on a shorthand machine.

Gervasi also visited Furay at his home on three occasions. On each occasion, a shorthand reporter was secreted in a location inside the house where he could overhear the conversation between the two and record it on a shorthand machine.

Of the six telephone conversations between defendant Ettinger and Furay, five were initiated by Ettinger and answered by Furay at his home. The other one was made by Furay from the State's Attorney's office. Each time Ettinger called Furay at home, a shorthand reporter employed by the State's Attorney's office was present and listened to and recorded the conversation. The same technique was used to record the call made from the State's Attorney's office.

Defendant Gervasi moved to suppress all transcripts and/or testimony regarding any conversations to which he was a party. He alleged that the conversations were the subject of illegal eavesdropping in violation of section 14—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 14—2). Defendant Ettinger then joined in Gervasi's motion to suppress.

After hearing argument on the motion, the trial court held that an

eavesdropping device, as defined by section 14—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 14—1), had been employed to transcribe the telephone conversations. Without reading the transcripts of any of the conversations, either telephonic or in-person, the trial court entered an order suppressing the transcripts of both the telephonic and in-person conversations. Additionally, the trial court entered an order suppressing the prospective testimony of the court reporters regarding both the telephonic and in-person conversations and the prospective testimony of Officer Furay regarding both the telephonic and in-person conversations.

Two statutory provisions are pertinent to our discussion of the facts in this case. Section 14—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 14—1) defines an eavesdropping device as:

"* * * any device capable of being used to hear or record oral conversation whether such conversation is conducted in person, by telephone, or by any other means; Provided, however, that this definition shall not include devices used for the restoration of the deaf or hard-of-hearing to normal or partial hearing."

Section 108A—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 108A—1) provides:

"The State's Attorney may authorize an application to a circuit judge for, and such judge may grant in conformity with this Article, an order authorizing or approving the use of an eavesdropping device by a law enforcement officer or agency having the responsibility for the investigation of any felony under Illinois law where any one party to a conversation to be monitored, or previously monitored in the case of an emergency situation as defined in this Article, has consented to such monitoring."

First, the State contends that the trial court erred in determining that an eavesdropping device was used and that since no eavesdropping device was used, no judicial authorization was necessary.

Illinois cases have consistently held that when a person listens with his unaided ear to a telephone on which a conversation is in progress, this listening does not constitute the use of an eavesdropping device. (See *People v. Giannopoulos* (1974), 20 Ill. App. 3d 338, 314 N.E.2d 237; *People v. Brown* (1970), 131 Ill. App. 2d 244, 266 N.E.2d 131; *People v. 5948 West Diversey Avenue, Second Floor Apartment* (1968), 95 Ill. App. 2d 479, 238 N.E.2d 229.) In none of these cases, however, was the telephone tampered with in any way. Therefore, the question with which we are concerned is whether a telephone with the speaking device removed, used in conjunction with a stenographic machine, is still a telephone.

A telephone is a dual purpose instrument. It is an apparatus consisting

of a transmitter for converting sounds into electrical impulses and a receiver for reproducing the original sounds from transmitted electrical impulses. (See Webster's Third New International Dictionary 2350 (3d ed. 1964).) When a telephone is altered so that it no longer serves one of its essential purposes, it can no longer be considered a telephone.

■■ Thus, it is our opinion that when the State removed the transmitter on the extension telephone in Officer Furay's home, the instrument was no longer a telephone. Furthermore, when the instrument was used in conjunction with a stenographic machine, it became an eavesdropping device.

The second argument advanced by the State on appeal is that the trial court erred in suppressing the following items of evidence: the transcripts of the telephonic and in-person conversations, the prospective testimony of Officer Furay and the court reporters regarding the telephone conversations, and the prospective testimony of Officer Furay and the court reporters regarding the in-person conversations.

■■ We are able to summarily dispose of the State's argument that the trial court erred in suppressing the transcripts of the overheard telephone conversations. Section 14—5 provides that any evidence obtained in violation of the Act is inadmissible in any civil or criminal trial. (See Ill. Rev. Stat. 1977, ch. 38, par. 14—5.) As we already have determined, the telephone conversations between defendants and Furay were unlawfully overheard and recorded. Thus, the trial court clearly was correct in suppressing the transcripts of the telephone conversations.

We are also able to reject without hesitation the State's argument that the trial court erred in suppressing the testimony of the court reporters regarding what was said in the telephone conversations. The fact that the State failed to obtain judicial authorization, combined with the fact that the court reporters were an essential component of the eavesdropping device, necessitates a finding that the court reporters' testimony was properly suppressed. See *People v. Porcelli* (1974), 25 Ill. App. 3d 145, 323 N.E.2d 1.

A more difficult issue is whether the trial court properly suppressed the prospective testimony of Officer Furay regarding the illegally over-heard telephone conversations. Relying on *People v. Porcelli,* the State claims that the trial court erred since the telephone conversations were motivated independently of the eavesdropping. In *Porcelli,* an assistant State's Attorney tape-recorded a telephone conversation between a lawyer and a policeman. In the conversation, the lawyer renewed a prior $300 offer he had made to the officer if the officer would change his report in reference to the lawyer's client who had been arrested by the officer. The court found that the officer's knowledge of what was said

was not gained from the illegal recording. Additionally, it found that there was no essential connection between the conversation and the eavesdropping and that the officer's testimony provided an independent source of its content. Accordingly, the *Porcelli* court permitted the officer to testify as to the contents of the conversation.

■■ The officer in *Porcelli* previously had been offered a bribe and the telephone conversation was merely a reiteration of that offer. In our case, nothing in the record indicates that Officer Furay had been offered a bribe prior to the day on which Gervasi first called him. The record indicates that Furay believed he would be offered a bribe based on the fact that Gervasi had given him a business card with the message "Danny, Going out of town Saturday, Sunday, Monday. Will return Tuesday afternoon. Could you please call, I would like to talk to you." Thus, since the record does not show that Furay had any independent source of knowledge that he would be offered a bribe, we are of the opinion that the trial court properly suppressed Furay's testimony as to the content of the illegally overheard telephone conversations between him and defendants.

To hold otherwise would be to undermine the fundamental purpose of the Illinois Eavesdropping Act (Ill. Rev. Stat. 1977, ch. 38, par. 14—1 *et seq.*, and Ill. Rev. Stat. 1977, ch. 38, par. 108A—1 *et seq.*), which is to prohibit unauthorized eavesdropping and the use of evidence gained by such eavesdropping. In this case, the entire scheme was deliberately contrived by the State to circumvent the statute, and any evidence gained as a result of this scheme should therefore be suppressed.

■■ Whether the trial court was correct in suppressing the testimony of Officer Furay and the court reporters regarding the in-person conversations and the transcripts of those conversations depends on whether the conversations were the "fruit of the poisonous tree." Evidence is the fruit of the poisonous tree if "* * * granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." (*Wong Sun v. United States* (1963), 371 U.S. 471, 488, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417; *People v. Satek* (1979), 78 Ill. App. 3d 543, 396 N.E.2d 1133; *People v. Robbins* (1977), 54 Ill. App. 3d 298, 369 N.E.2d 577.) The Illinois Supreme Court has specifically held that the fruit of the poisonous tree doctrine is applicable to illegally obtained eavesdropping evidence. See *People v. Maslowsky* (1966), 34 Ill. 2d 456, 216 N.E.2d 669.

As the trial court noted, it is a logical inference that information obtained from the illegal eavesdropping was relied on by the State in arranging to have shorthand reporters secreted in the Furay residence to overhear conversations. We find, however, that the trial court, without

having read the transcripts of the conversations, could not have determined by the weight of the evidence that the conversations were the fruit of the poisonous tree. We therefore vacate that portion of the trial court's order.

■■ Thus, we remand the case with directions that the trial court conduct a hearing to determine whether the testimony of Officer Furay and the court reporters regarding the in-person conversations and the transcripts of those conversations were the fruit of the poisonous tree.

In sum, we affirm the trial court's finding that an eavesdropping device was used. We also affirm the trial court's order suppressing transcripts of all of the overheard telephone conversations and the prospective testimony of Officer Furay and the court reporters regarding the overheard telephone conversations. Additionally, we remand the case with instructions· that the trial court conduct a hearing to determine whether the testimony of Officer Furay and the court reporters regarding the in-person conversations and the transcripts of those conversations were the fruit of the poisonous tree.

Order affirmed in part, vacated in part; cause remanded with directions.

GOLDBERG, P. J., and O'CONNOR, J., concur.