(No. 54225.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. JOHN GERVASI *et al.,* Appellees.

*Opinion filed April 16, 1982.*

CLARK, J., specially concurring.

WARD and SIMON, JJ., concurring in part and dissenting in part.

Tyrone C. Fahner, Attorney General, of Springfield, and Bernard Carey and Richard M. Daley, State's Attorneys, of Chicago (Melbourne A. Noel, Jr., and Mark Rotert, Assistant Attorneys General, of Chicago, and Marcia B. Orr, Joel A. Stein, and Michael E. Shabat, Assistant State's Attorneys, of counsel), for the People.

Neville, Pappas & Mahoney, of Chicago (Ronald F. Neville, George Pappas, and Anthony J. Onesto, of counsel), for appellee John Gervasi.

Sam Adam and James I. Marcus, of Chicago (Barry Spevack and Williams & Marcus, Ltd., of counsel), for appellee Michael Ettinger.

CHIEF JUSTICE RYAN delivered the opinion of the court:

The defendants, John Gervasi and Michael Ettinger,

were charged in a nine-count indictment with bribery, solicitation, and conspiracy in the circuit court of Cook County. At a hearing on a motion to suppress evidence, it was stipulated that telephone conversations between the defendants and police officers were overheard by court reporters who were listening on extension telephones from which the speaking element had been removed. Also, other conversations were overheard by investigators and court reporters without any listening devices. All the conversations were taken down by the court reporters using a stenograph machine. The trial court, on defendants' motion, suppressed all transcripts of and testimony relating to the conversations. The appellate court affirmed in part and remanded for a hearing on whether the testimony and transcripts of the in-person conversations should have been suppressed. (90 Ill. App. 3d 1117.) We granted the State leave to appeal. 73 Ill. 2d R. 315.

Charles Soteras, while driving a stolen automobile, was arrested by Blue Island police officer Daniel Furay and Sergeant Paul Barnes. Defendant Gervasi, an attorney, was called to the police station to represent Soteras.

Gervasi told Furay that he would contact him later. Several days later, Furay received a business card from defendant Gervasi with the following words written on the back: "Danny, Going out of town Saturday, Sunday, Monday. Will return Tuesday afternoon. Could you please call. I would like to talk to you." Furay, believing that he would be offered money to help Soteras in his pending criminal case, contacted the Cook County State's Attorney's office. A plan was devised to monitor the conversations between defendant Gervasi and Furay.

During the next two months, Gervasi called Furay at his home 20 times. A court reporter, employed by the State's Attorney's office, was present and listened to all of the conversations on an extension telephone in the Furay home. The telephone was a regular telephone that

had been in the home for several years. On each occasion, the reporter removed the speaking element in the mouthpiece of the telephone, listened to the conversation and transcribed it with "the same type of manually operated machine used by most court reporters in the courtroom." On three occasions Furay called Gervasi. One call was made from Furay's home and the other two were made from the State's Attorney's office. These conversations were monitored by court reporters on extension phones which had been similarly altered.

Gervasi also visited Furay at his home on four occasions. On two occasions, a court reporter was located so that he could overhear the conversation, which he recorded by use of a stenograph machine.

Officer Furay had six telephone conversations with defendant Ettinger, also an attorney. The same technique as described above was used to record the conversations with defendant Ettinger.

There were three telephone conversations between defendant Gervasi and an assistant State's Attorney. Also, one telephone conversation took place between Gervasi and Sergeant Barnes. These conversations were monitored and recorded using the same technique described above.

The trial court held that an eavesdropping device as defined in section 14—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 14—1) had been used to transcribe the telephone conversations and that the State's Attorney's office had not received judicial approval as provided in section 108A—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 108A—1). The trial court entered an order suppressing the court reporters' transcripts of both the telephone and in-person conversations between the defendants and investigators. Also, the court suppressed the prospective testimony of the court reporters and the police officers regarding all conversations with the defendants. The

appellate court affirmed but remanded with directions to conduct a hearing to determine whether the testimony of Officer Furay and the court reporters "regarding the in-person conversations and the transcripts of these conversations were the fruit of the poisonous tree."

The State argues that no eavesdropping device was used in this instance and that, therefore, no judicial authorization was required. Secondly, the State argues that, even if there was an eavesdropping device in use, the testimony of Office Furay was not tainted in any way and, therefore, should not be suppressed.

We first consider whether an extension telephone with the speaking element removed from the mouthpiece is an eavesdropping device as defined in section 14—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 14—1(a)), which states that an eavesdropping device is "any device capable of being used to hear or record oral conversation whether such conversation is conducted in person, by telephone, or by any other means." (Ill. Rev. Stat. 1977, ch. 38, par. 14—1(a).) In *People v. Gaines* (1981), 88 Ill. 2d 342, we held that an extension telephone was not an eavesdropping device within the statutory definition. In *Gaines* we reaffirmed this court's holding in *People v. Dixon* (1961), 22 Ill. 2d 513, which was decided under the 1959 eavesdropping statute and applied the holding in *Dixon* to the current definition of an eavesdropping device in section 14—1(a) of the Criminal Code of 1961. We stated in *Gaines* that the basis of the *Dixon* decision must have been "that the statute is directed against the use of devices other than the telephone itself when the latter has not been functionally altered." (*People v. Gaines* (1981), 88 Ill. 2d 342, 363.) An extension telephone by itself, therefore, is not an eavesdropping device. However, if it has been "functionally altered" in some manner so that it is no longer capable

of performing its customary function it is no longer a telephone.

The function of a telephone is to transmit and receive sound. A telephone which is altered so that it can no longer perform one of these functions, namely the transmission of sound, is not a telephone but only a listening device. The removal of the transmitter or speaking element from the mouthpiece of each of the telephones made them eavesdropping devices within the meaning of our statute.

We next consider the effect of the illegal monitoring of these telephone conversations. Since one party to the conversations had consented to the monitoring, neither the Federal Constitution, nor the constitution of this State was offended. (*People v. Kezerian* (1979), 77 Ill. 2d 121; *People v. Richardson* (1975), 60 Ill. 2d 189.) However, section 14—5 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 14—5) provides:

"Any evidence obtained in violation of this Article is not admissible in any civil or criminal trial ***."

Also, article 108A of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 108A—1 *et seq.*) provides for judicial supervision of the use of eavesdropping devices and states:

"(a) Any aggrieved person in any judicial or administrative proceeding may move to suppress the contents of any recorded conversation or evidence derived therefrom ***." (Ill. Rev. Stat. 1977, ch. 38, par. 108A—9.)

By virtue of these two statutory provisions, the trial court properly suppressed the testimony of the court reporters as to the telephone conversations and the transcripts of what they heard by use of the altered extension telephones.

The appellate court held that the prospective testimony of Officer Furay, Sergeant Barnes and Assistant State's Attorney Burnham, participants in the various

conversations, was "fruit of the poisonous tree" and should be suppressed. (*Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.) The State argues that the "fruit of the poisonous tree" doctrine does not apply in this instance since the knowledge of the investigators was not derived from an unlawful act and that an independent basis exists for the investigators' knowledge of the contents of the conversations.

The test of whether evidence is "fruit of the poisonous tree" is best stated in *Wong Sun v. United States* (1963), 371 U.S. 471, 487-88, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417, as follows:

> "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'
> Maguire, Evidence of Guilt, 221 (1959)."

In *People v. Maslowsky* (1966), 34 Ill. 2d 456, we held that the "fruit of the poisonous tree" doctrine was expressly included in our eavesdropping statute by the legislature.

However, the doctrine does not apply in this case. The testimony of the investigators regarding the conversations would not even come within the broader "but for" test rejected by the Supreme Court in *Wong Sun*. The basic assumption underlying the "fruit of the poisonous tree" doctrine is that the challenged evidence is *derived* from some violation of a statutory or constitutional right. In *United States v. Crews* (1980), 445 U.S. 463, 470, 63 L. Ed. 2d 537, 545, 100 S. Ct. 1244, 1249, the Supreme Court stated:

"*Wong Sun, supra,* articulated the guiding principle for determining whether evidence *derivatively* obtained from a violation of the Fourth Amendment is admissible against the accused ***." (Emphasis added.)

The court went on to state:

"In the typical 'fruit of the poisonous tree' case, however, the challenged. evidence was acquired by the police *after* some initial Fourth Amendment violation, and the question before the court is whether the chain of causation proceeding from the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstance so as to remove the 'taint' imposed upon that evidence by the original illegality. Thus most cases begin with the premise that the challenged evidence is in some sense the product of illegal governmental activity." (*United States v. Crews* (1980), 445 U.S. 463, 471, 63 L. Ed. 2d 537, 545, 100 S. Ct. 1244, 1249-50.)

See also *Lopez v. United States* (1963), 373 U.S. 427, 10 L. Ed. 2d 462, 83 S. Ct. 1381.

This doctrine cannot apply where, as here, the investigators' knowledge was not derived from the court reporters' eavesdropping activities. In this case, there is no primary illegality in regard to the investigators' knowledge of the content of the conversations.

The defendants rely on *People v. Satek* (1979), 78 Ill. App. 3d 543, to support their position that the testimony of the officers should be suppressed. In *Satek* a suspect, James Poghen, Jr., placed a phone call from the police station which was recorded. After having been told that the call had been recorded, Poghen admitted his involvement in the offense and implicated the defendant in that case, James Satek. The trial court suppressed Poghen's testimony at Satek's trial because of a violation of the

eavesdropping statute. The court held that although Poghen had first-hand knowledge of the offense independent of the recording, his testimony should be suppressed except as to those events occurring after he had been approached by the police until the time that he made the telephone call. The appellate court held that the trial court could have concluded that Poghen's testimony was not obtained by a means subsequently distinguishable from the illegality so as to be purged of the taint. The trial court could have considered that Poghen's conversation and statement implicating Satek occurred immediately after he was told that the phone call had been recorded. The gist of the holding in *Satek* is that the information concerning Satek's involvement had been induced by or come by as a result of the illegal eavesdropping. The holding in *Satek* is not helpful under the facts of our case. The officers' knowledge of and his testimony concerning the contents of the phone conversations in our case were completely independent of the illegal eavesdropping. Therefore, there is no indication that the testimony of these officers was in any way induced or influenced by the eavesdropping. Here the officers were the actual participants in the conversations. Their knowledge of what was said was not derived from any illegal action. They spoke directly with the defendants, and most of the conversations were initiated by the defendants and none of them were the result of illegal eavesdropping. The officers were the participants in the conversations and were not the eavesdroppers.

In *People v. Porcelli* (1974), 25 Ill. App. 3d 145, an assistant State's Attorney tape-recorded a telephone conversation between a policeman and a lawyer. The lawyer offered money to a policeman if he would change a police report in reference to a client of the defendant lawyer. The lawyer was indicted for bribery. The tape recording was suppressed by the trial court because the authorization

by the State's Attorney did not meet the standards required by Illinois law. The appellate court affirmed the suppression of the tape recording but held that the policeman should be permitted to testify to what was said. The court stated:

> "[T]he transcribing did not render inadmissible all testimony concerning the conversation or the evidence which was not directly derived from it." (*People v. Porcelli* (1974), 25 Ill. App. 3d 145, 150.)

The court also pointed out that the conversation was motivated independently of the eavesdropping and that there was no connection between the conversation and the eavesdropping. As in the instant case, the policeman in *Porcelli* was a participant in the conversation and his knowledge of what was said was not derived from the illegal recording. (See *People v. Mosley* (1978), 63 Ill. App. 3d 437.) In our case, as in *Porcelli,* the defendant knew that he was dealing with police officers. The eavesdropping statute does not protect a wrongdoer's misplaced belief that a person to whom he voluntarily confides will not thereafter properly reveal his wrongdoing. The officers did not surreptitiously obtain information from the defendants. In *United States v. White* (1971), 401 U.S. 745, 751, 28 L. Ed. 2d 453, 458, 91 S. Ct. 1122, 1125-26, the Supreme Court stated:

> "Concededly a police agent who conceals his police connections may write down for official use his conversations with a defendant and testify concerning them, without a warrant authorizing his encounters with the defendant and without otherwise violating the latter's Fourth Amendment rights."

We conclude that the testimony of the officers as to the telephone conversations should not have been suppressed.

The final issue is whether the testimony and transcripts

of the in-person conversations between defendant Gervasi and Officer Furay should be suppressed. There were four in-person conversations, two of which were overheard by Sergeant Barnes and an investigator for the State's Attorney's office, and the other two conversations were overheard by a court reporter who recorded them on a stenograph machine. The in-person conversations were overheard without the aid of any eavesdropping devices.

The appellate court remanded this issue to the trial court with directions to hold a hearing to determine whether the testimony and transcripts of those conversations "were the fruit of the poisonous tree." The trial court held that there is a logical inference that the information obtained from the illegal eavesdropping was relied on by the State in arranging to have persons in the Furay residence to overhear the in-person conversations. The appellate court, however, held that the trial court, without having read the transcripts of the eavesdropping, could not have determined that the conversations were the fruit of the poisonous tree and thus remanded for a hearing on this issue. As we have noted, Officer Furay was a participant in the conversations. The transcripts of the telephone conversations could contain no information to which Officer Furay could not testify.

The defendant has not demonstrated, except by conjecture, that the monitoring of the in-person conversations was in any way the result of the illegal eavesdropping. In *People v. Wilson* (1975), 60 Ill. 2d 235, 238, this court stated:

> "If an accused establishes the 'primary illegality' and shows a connection between the illegality and what are alleged to be the fruits of the illegality, the prosecution will have the burden of establishing by clear and convincing evidence that the challenged evidence has come from an independent source."

In our case the defendant has not met the burden of

showing a connection between the illegal eavesdropping and the subsequent in-person conversations between the defendant Gervasi and Officer Furay. Thus, the burden of establishing that the challenged evidence has come from an independent source has not shifted to the State. It is more logical to assume that these meetings were the result of Officer Furay's activities and the information obtained from him than it is to assume, as the trial court did, that they stemmed from the illegal eavesdropping. In *Silverthorne Lumber Co. v. United States* (1920), 251 U.S. 385, 392, 64 L. Ed. 319, 321, 40 S. Ct. 182, 183, the court stated that "[i] f knowledge of them [corporate records] is gained from an independent source they may be proved like any others." Officer Furay is an independent source of all information overheard by investigators or court reporters, and the overheard conversations "may be proved like any others."

In sum, we hold that an extension telephone with the speaking element in the mouthpiece removed is functionally altered and was, therefore, not a telephone but an eavesdropping device. The court reporters' testimony as to what they overheard in this manner was properly suppressed. Also, transcripts of the telephone conversations made by the court reporters were properly suppressed. The testimony of Officer Furay, Sergeant Barnes and Assistant State's Attorney Burnham regarding their telephone conversations with the defendants should not have been suppressed. Likewise, the testimony by the investigators and court reporters regarding the in-person conversations between defendant Gervasi and Officer Furay and the transcripts of those conversations should not have been suppressed.

Accordingly, the appellate court is affirmed insofar as it affirmed the suppression of the testimony of the court reporters and their transcripts concerning the monitored telephone conversations. The appellate court is reversed as to its order vacating the circuit court's suppression of

the testimony of the participants in the conversations and the transcripts of the in-person conversations. The appellate court is also reversed as to its order remanding for further hearing the question of the suppression of the testimony and the transcripts of the overheard in-person conversations. The cause is remanded to the circuit court of Cook County for further proceedings.

*Appellate court affirmed in part and reversed in part; cause remanded.*

JUSTICE CLARK, specially concurring:

I concur with the result reached by the majority. I adhere to the statements made in my dissent in *People v. Gaines* (1981), 88 Ill. 2d 342, that when an extension telephone is used to surreptitiously overhear the conversation of two people, then it becomes an eavesdropping device although one party may have consented. It is the use to which the extension telephone is put that makes it illegal. I believe that to hold otherwise ignores the plain meaning of the statutory language that an "eavesdropping device" as defined by section 14—1(a) of the Criminal Code of 1961 is "*** *any* device *capable of* being used to hear or record oral conversation whether such conversation is conducted in person, *by telephone,* or by any other means ***." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 38, par. 14—1(a).

The majority, in my opinion, correctly concludes that the "functionally altered" extension telephone is an eavesdropping device as defined in section 14—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 14—1(a)), and evidence obtained through its use is properly suppressed.

I also agree with the majority that the appellate court erred in determining that the testimony and transcripts

of the in-person conversations between the defendant and Officer Furay should have been suppressed, since the State adequately demonstrated that the evidence came from "an independent source." I do, however, disagree with the majority insofar as the court addresses the defendant's *burden* of demonstrating a connection between the illegal eavesdropping and the subsequent in-person conversations. It is true that the defendant must show a connection between the illegality and the alleged fruits of that illegality. (*Cf. Harrison v. United States* (1968), 392 U.S. 219, 20 L. Ed. 2d 1047, 88 S. Ct. 2008.) But the defendant does not shoulder a "burden" of establishing that connection by clear and convincing evidence. It is the State that, following the showing of the primary illegality and the connection to the evidence in question, must carry the burden of demonstrating by clear and convincing evidence that the source of the information is an independent one. *People v. Wilson* (1975), 60 Ill. 2d 235, 238; *Harrison v. United States* (1968), 392 U.S. 219, 20 L. Ed. 2d 1047, 88 S. Ct. 2008.

The majority notes that in determining whether evidence is admissible the inquiry properly focuses on whether the "taint" of the original illegality has been removed. " '*** Thus most cases begin with the premise that the challenged evidence is in some sense the product of illegal governmental activity.' " (89 Ill. 2d at 529, quoting *United States v. Crews* (1980), 445 U.S. 463, 471, 63 L. Ed. 2d 537, 545, 100 S. Ct. 1244, 1249-50.) However, the State met its burden of showing that, since Officer Furay was a participant in the phone conversations, he did not have to rely on the transcripts gained through the illegal eavesdropping. As such the State established independent grounds that removed the "taint" from the in-person conversations and the transcripts of those conversations. That evidence should not have been suppressed.

JUSTICE WARD, concurring in part and dissenting in part:

I concur insofar as the majority has reversed the appellate court, but I must respectfully dissent from the majority's view that the removal of the speaking element from the mouthpiece of an extension telephone converted the telephone into an eavesdropping device. The majority's reasoning is plausible only at a quick reading. On consideration, the analysis, I believe, is overly simple; the question involved is more subtle than the majority perceives.

Our eavesdropping statute defines an eavesdropping device as "any device capable of being used to hear or record oral conversation whether such conversation is conducted in person, by telephone, or by any other means." (Ill. Rev. Stat. 1977, ch. 38, par. 14—1(a).) The majority correctly recognizes that an extension telephone is not of itself an eavesdropping device. The eavesdropping statute is directed at devices "capable of being used to hear or record oral conversation," including conversations conducted by telephone. A telephone is obviously capable of being used to hear and is not of itself a device at which the eavesdropping statute is directed. The statute is directed at devices other than telephones themselves. It would, however, reach devices that might be attached or added to telephone instruments or equipment or wires, which are capable of being "used to hear or record" conversations. (Curiously and, to me, unconvincingly, the majority holds that the removal of a part of the extension phone transformed it into an eavesdropping device. That is, changed it into a "device capable of being used to hear ***." Of course, it, as a phone, was already capable of being used to hear. Too, until now the common perception has always been that eavesdropping involves the *attachment* of a device to a telephone or to its equipment or wires—not the *removal* of a part of the phone.)

The majority says that the telephones here were eaves-

dropping devices because this court in *People v. Gaines* (1981), 88 Ill. 2d 343, 363, observed that the eavesdropping statute is directed against the use of devices other than the telephone itself when the telephone "has not been functionally altered." The majority then goes on to hold that a telephone without a speaking element is no longer a telephone but has become an eavesdropping device. That would mean that it now has become "capable of being used to hear or record oral conversation." But it was, however, as stated, capable of being used to hear in its prior state or condition simply as a telephone. We used the language quoted from *Gaines* in reaffirming this court's holding in *People v. Dixon* (1961), 22 Ill. 2d 513, that an extension telephone was not an eavesdropping device. The extension phones involved in *Dixon* and in *Gaines* were purely extension phone instruments; they were not altered in any way. The reference in *Gaines* to phones that had not been functionally altered was obviously nondecisional language. The language was not necessary to determine the question whether there had been eavesdropping, as the extension telephone had not been altered. It did not set out the holding in the case. And certainly *Gaines* did not undertake to define what was meant by a functional alteration. Furthermore, the majority oversimply concludes that a "functionally altered" phone is an eavesdropping device. It says that because the speaking element was removed from the phone it was functionally altered and therefore became an eavesdropping device. This is erroneous. Obviously a phone that is "functionally altered" to create a conversation piece by replacing the speaking element with an alarm-clock unit or a tiny musical tape player does not become an eavesdropping device. Every alteration is not to be equated with a conversion into an eavesdropping device. If, however, in a police interrogation room a recording device were inserted in what seemed to be an innocent telephone, the phone would be

truly functionally altered. The dummy phone would be a device capable of recording. It would have been changed to an eavesdropping device.

The extension phone here was not altered in the sense that it became an eavesdropping device. Considering the language and purpose of the eavesdropping act one can say that an eavesdropping device is one that permits one to hear a conversation or record it by means of a device other than simply a telephone.

If the person who is monitoring simply listens on an extension telephone that was altered but only in such a way that the monitor's ability to hear the conversation on the principal telephone was not enhanced or affected in any way, there is no ground for saying that the extension telephone was converted into an eavesdropping device. The monitoring person's testimony should be admitted and any transcript of the defendant's statements should also be admitted, as it was not made by use of an eavesdropping device attached to the extension phone or to the equipment. The result or effect of the extension telephone's use here was the same so far as the listeners were concerned as if the extension had not been altered. There was no other person permitted to hear the conversation who would not have been able to have heard it were the telephone unaltered. The legislative intendment of the eavesdropping statute was to prevent persons from hearing a conversation who, unaided by an eavesdropping device, would not have been able to have listened to the conversation.

The purpose of removing the mouthpiece here was, of course, to prevent the defendant from hearing any background sounds through the extension which might have led him to suspect that his statements were being monitored or that they were being taken down, in which case the defendant, of course, would have ended the conversation.

In *Gaines*, we made reference to this court's holding in *People v. Kurth* (1966), 34 Ill. 2d 387. There the State's witness had had installed on his telephone an electronic device which was used to monitor a conversation between Smith and the defendant (see 34 Ill. 2d 387, 392). A recording of that conversation was also made, and the question was whether the recording was admissible. There was no listening in on an extension telephone. This court treated the device as an eavesdropping device.

*Adams v. State* (1981), 289 Md. 221, 424 A.2d 344, involved a factual situation resembling the one here. There a rape victim made a tentative photographic identification of the defendant and the police decided to conduct a voice identification through use of the telephone. The victim listened in on the extension phone within the station while a policewoman made calls to the defendant. The mouthpiece of the victim's phone was removed so that the receiving party would not be aware of the presence of the victim. The victim identified the defendant's voice as that of her attacker.

The defendant contended that the voice identification involved an unauthorized interception in violation of the State's wiretap laws. Maryland's statute differs from ours, and what the court said concerning the interception question is not relevant here. But the observation of the court that the use of the telephone instrument did not convert it into something other than a telephone is pertinent. The court said:

"The appellant places some significance on the fact that the mouthpiece of the extension phone was removed. This did not substantially alter the instrument so that it became something other than a telephone. The police could have achieved the same result by having the victim hold her hand over the mouthpiece." *Adams v. State* (1981), 289

Md. 221, 229, 424 A.2d 344, 348.

I submit that the removal of the mouthpiece here was not, given the language of our eavesdropping statute, an event or act of legal significance. The effect or result so far as the monitoring stenographer was concerned was just the same as it would have been had the mouthpiece not been removed. In either event, she would have heard the statements of the defendant and would have been enabled to take them down.

Accordingly, I would reverse the judgments of the appellate and circuit courts.

JUSTICE SIMON, also concurring in part and dissenting in part:

I agree with the majority that an eavesdropping device was employed, and that the appellate court properly affirmed the suppression of the testimony of the court reporters and their transcripts concerning the monitored telephone conversations. I dissent, however, insofar as the majority has reversed the appellate court, because I regard the majority's conclusion that the testimony of the officers regarding the telephone conversations should not have been suppressed as premature. So is the majority's conclusion that the in-person conversations and transcripts of them should not have been suppressed. I believe additional evidence is required before any court can properly determine whether these conversations or some of them should be suppressed.

It is possible and likely, as the defendants argue, that the transcripts suppressed by the court in this case were used by the police or officials of the State's Attorney's office to coach Officer Furay, Sergeant Barnes and Assistant State's Attorney Burnham regarding the direction in which they should lead their future conversations with defendants Gervasi and Ettinger. Even if the defendants have the burden to show that the illegal transcripts were

used for this purpose, in view of the procedure followed in the circuit court, where the defendants prevailed, they do not appear to have had the opportunity to show whether the tainted transcripts were referred to in arranging the later telephone and in-person conversations. If transcripts of the illegally recorded conversations were referred to by any of the government agents involved to prepare for future conversations with the defendants, I believe that these conversations were also tainted and should be suppressed.

Implicit in *People v. Wilson* (1975), 60 Ill. 2d 235, 238, upon which the majority's conclusion on this point turns, is the requirement that the defendants be given a chance to develop this type of evidence before the question of suppression is finally determined. If the defendants are successful in doing this, it would then be the State's burden to rebut by clear and convincing evidence what the defendants had established. The State would have to prove either that the transcripts were never referred to or that Officer Furay was an independent source of what was said in later conversations. The answers to these questions are by no means as clear cut as the majority appears to believe. If the evidence shows that Officer Furay or his collaborators referred to the tainted transcripts to refresh their recollection or to obtain advice to prepare for later conversations, I do not see how he can still be labeled an independent source for the purpose of subsequent conversations.