THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JERRY L. ALEXANDER, Defendant-Appellant.

Third District   No. 3—92—0517

Opinion filed May 7, 1993.

Butz, Jaffe, Collins, O'Connor & Burnett, of Kankakee (Duane J. O'Connor, of counsel), for appellant.

Clarke Erickson, State's Attorney, of Kankakee (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

Following a jury trial, the defendant, Jerry Alexander, was convicted of the offense of unlawful use of weapons (720 ILCS 5/24—1 (West 1992)). He was placed on probation for 12 months. On appeal,

the defendant raises the following issues: (1) whether he was denied due process when the circuit court permitted a witness to testify regarding conversations he had with the defendant; (2) whether section 24—1(a)(6) of the Criminal Code of 1961 (720 ILCS 5/24—1(a)(6) (West 1992)) is unconstitutionally vague in language, application, and effect; and (3) whether his guilt was established beyond a reasonable doubt. We affirm.

On April 17, 1991, Russell Vining placed several calls to the residence of the defendant. The purpose of the telephone calls was to request that the defendant loan a .380-caliber semi-automatic pistol and a silencer to Vining. Vining had previously sold the pistol and silencer to the defendant. At the time of the calls, Vining was acting as a police informant for the Illinois State Police and the Bradley police department. The telephone line on which the calls were placed had been tapped, and the police recorded the conversations between Vining and the defendant.

Jeff Justice, a special agent for the Illinois State Police, Division of Criminal Investigation, testified that he was contacted by Lieutenant Buhrmester of the Bradley police department on April 17, 1991. Buhrmester told Justice that there was a possible contract murder about to take place against a Kankakee police officer. Buhrmester, Justice, and Lieutenant Hevia met with Vining at approximately 9 p.m. that same evening. Vining informed the officers that at some time after 5 p.m. he had been contacted by Randy Huffman. Huffman wanted Vining to retrieve the pistol and silencer. Vining informed the officers that the weapon was in the possession of the defendant. The officers decided to have Vining phone the defendant and to make arrangements to have the defendant deliver the weapon and silencer to Vining's place of business.

On the morning of April 18, 1991, the defendant brought the pistol and silencer to Vining's place of business in Bradley, Illinois. Thereafter, both men got into the defendant's truck and went to a restaurant. Vining was wearing a recording device on the morning of April 18, and all conversations with the defendant were recorded.

A judicial order authorizing the recording of the conversations was not obtained until 5:03 p.m. on April 18, after the conversations had occurred. The defendant was charged with the offense of unlawful use of weapons pursuant to section 24—1(a)(6), which prohibits the possession of silencers. Prior to trial, the defendant filed a motion to suppress the recorded conversations pursuant to section 108A—9 of the Code of Criminal Procedure of 1963 (725 ILCS 5/108A—9 (West 1992)). The court granted the motion, finding that an emergency situ-

ation necessary for eavesdropping without prior judicial approval did not exist. Despite the suppression order, Vining was allowed to testify regarding the substance of his conversations with the defendant. The jury found the defendant guilty, and he was placed on nonreporting probation for 12 months.

■ On appeal, the defendant first argues that he was denied due process when the circuit court allowed Vining to testify regarding the substance of their conversations. The defendant claims that the court suppressed the contents of the recordings, not just the recordings themselves. Nevertheless, the supreme court held in *People v. Gervasi* (1982), 89 Ill. 2d 522, 434 N.E.2d 1112 (a case the defendant does not even attempt to distinguish), that the testimony of one of the participants to a conversation was not tainted by illegal eavesdropping. The *Gervasi* court explained that the testimony of one of the participants to the conversation was not "fruit of the poisonous tree" because his knowledge of what was said was not derived from any illegal action. The court stated that "[t]he eavesdropping statute does not protect a wrongdoer's misplaced belief that a person to whom he voluntarily confides will not thereafter properly reveal his wrongdoing." (*Gervasi*, 89 Ill. 2d at 531, 434 N.E.2d at 1116.) Therefore, although the actual recordings of the conversations between Vining and the defendant were correctly suppressed, it was proper for the trial court to allow Vining to testify regarding the substance of those conversations.

■ The defendant next argues that section 24—1(a)(6) is unconstitutionally vague in language, application, and effect. The section in question provides that it is an unlawful use of a weapon to possess "any device or attachment of any kind designed, used or intended for use in silencing the report of any firearm." (720 ILCS 5/24—1(a)(6) (West 1992).) The defendant complains of the use of the word "silencing." According to the defendant, if used in the present tense the word means to create the total absence of sound, but if used in the future tense, it would mean the acts performed in bringing about the total absence of sound. The defendant claims that this creates two different standards. The defendant would prefer that the statute prohibit devices which diminish, muffle, or reduce the report of any firearm. We find the defendant's argument to be meritless.

Statutes are presumed constitutional, and it is the duty of a reviewing court to affirm their constitutionality and validity if it can reasonably be done. (*People v. Haywood* (1987), 118 Ill. 2d 263, 515 N.E.2d 45.) In addition to the language used in the statute, consideration is also given to the legislative objective and the evil the statute

is designed to remedy. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.) In *People v. Capitol News, Inc.* (1990), 137 Ill. 2d 162, 171, 560 N.E.2d 303, 307, the supreme court stated:

> "To avoid a complaint of vagueness and to satisfy due process, a statute must give a person of ordinary intelligence reasonable opportunity to know what conduct is lawful under it and what is prohibited and must provide standards to guide persons who administer the law so that there will not be arbitrary and discriminatory enforcement of the statute. An impossible standard of preciseness of language and expression cannot be required; it is enough that the law's language and meaning are sufficiently definite when measured by common understanding and practices."

We find no vagueness problem in section 24—1(a)(6). It is clear that the legislature intended in this section to outlaw the types of devices commonly referred to as silencers. The defendant cannot seriously argue that a person of ordinary intelligence would not understand that the device in question in this case would be prohibited by this statute. Further, the definition of silencer is "a silencing device for small arms that permits the exit of the projectile but *reduces* the noise without materially impeding the escape of the exploding gases." (Emphasis added.) (Webster's Third New International Dictionary 2117 (1966).) We decline to adopt the defendant's interpretation of the statute, because we find it to be contrary to both legislative intent and common sense. If a law is susceptible of a reasonable interpretation that supports its constitutionality, the court must accord the law that meaning. (*People v. Ford* (1991), 221 Ill. App. 3d 354, 581 N.E.2d 1189.) Our interpretation of the section in question is that it prohibits silencers, and a silencer does not have to create a complete absence of sound. We find the statute to be sufficiently definite to apprise a person of ordinary intelligence of what conduct it prohibits.

■ The defendant's final argument is that his guilt was not established beyond a reasonable doubt. The defendant bases this argument on the testimony of Robert Hunton, an employee of the Joliet crime lab, who stated that the device in question would diminish the report of a firearm. No witness testified that it would silence the report of a firearm. A reviewing court will not overturn a conviction so long as the evidence was sufficient for any rational jury to find the necessary elements beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) As previously stated, the legislative intent behind section 24—1(a)(6) is the prevention of the possession of silencers. Hunton repeatedly referred to the device in ques-

tion as a silencer. A rational jury could clearly find the elements of the crime established beyond a reasonable doubt.

For the reasons stated, the defendant's conviction for unlawful use of weapons is affirmed.

Affirmed.

SLATER and BARRY, JJ., concur.